## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PAUL EARLY and JONATHAN GOLLNER, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br> v.<br><br>SINEMIA INC.,<br><br>    Defendant. | CASE NO. _____<br><br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

## PLAINTIFFS' CLASS ACTION COMPLAINT

Plaintiffs Paul Early and Jonathan Gollner (hereinafter "Plaintiffs"), on behalf of themselves and proposed classes of all others who are similarly situated, submit this Class Action Complaint (the "Complaint") against Defendant Sinemia Inc. (hereinafter "Sinemia" or "Defendant"), and upon information and belief and investigation of counsel, state as follows:

## NATURE OF THE CASE

1. This is a consumer class action lawsuit against Sinemia, Inc. Sinemia offers subscription-based movie ticket plans whereby consumers can pay for a monthly or yearly plan that allows them to see a certain number of movies per month. Sinemia, however, has essentially become a bait-and-switch scheme: it lures consumers in by convincing them to purchase a purportedly cheaper movie subscription, and then adds undisclosed fees that make such purchases no bargain at all. Sinemia fleeces consumers with an undisclosed, unexpected, and not-bargained-for processing fee each time a plan subscriber goes to the movies using Sinemia's service.

2.      Like many industries, the movie theater ticket business is changing with the proliferation of websites and smartphone apps.   Starting most notably with MoviePass, consumers now have the option of paying for subscription services that allow them to see either an unlimited or a specific number of movies per month at just about any theater they want. MoviePass started by offering subscribers the ability to see unlimited movies for a low monthly fee.

3.      Sinemia launched a service similar to MoviePass with the idea of being more financially sustainable.[1]   Specifically, while Sinemia also offers a variety of subscription packages that allow customers to see multiple movies per month and pay less per ticket to do so than if they bought them directly from theaters, its subscription packages are more expensive and offer less than an unlimited number of movies per month as compared to MoviePass.  For example, current packages include three movie tickets per month for $8.99 per month.  Another package offers "A Movie Every Weekday" for $23.99 per month.[2]

4.      Sinemia's website and marketing leads potential subscribers to believe that the monthly price advertised is the all-in or total price they have to pay in order to see a certain number of movies.  This is an attractive value proposition to consumers because Sinemia's monthly pricing averages out to significantly less per movie than simply buying tickets from theaters each time.

---

[1] *See* https://www.forbes.com/sites/jamos/2018/08/16/sinemia-tosses-rival-moviepass-subscribers-a-life-preserver/#7314479a6957 (last visited Nov. 8, 2018); https://finance.yahoo.com/news/moviepass-struggles-sinemia-intends-thrive-191923782.html (last visited Nov. 8, 2018).
[2] https://www.sinemia.com/new-plans (last visited Nov. 7, 2018).

5.      Plaintiffs and class members relied on Sinemia's representations regarding the monthly price in subscribing to the service, often paying for an entire year upfront in order to avoid an initiation fee.

6.      Unfortunately for Plaintiffs and members of the classes (defined below), Sinemia's apparent pricing is too good to be true.  Despite advertising that leads customers to believe that the monthly price is the total they have to pay, Sinemia adds hidden "processing fees" typically in the amount of $1.80 per movie ticket.[3]

7.      The additional $1.80 per ticket charged by Sinemia dramatically changes the value proposition that customers thought they were getting from Sinemia.

8.      Sinemia knew that Plaintiffs and all of their subscribers relied on its representations about pricing in marketing a product designed almost exclusively around the idea of saving people money on movie tickets.  Sinemia was aware of Plaintiffs' and the other members of the classes' reliance on its representations when they entered into monthly and often year-long subscriptions.

9.      By this action and as a result of Sinemia's conduct (discussed below in more detail), Plaintiffs seek, on behalf of other similarly situated persons, damages and other relief arising from Sinemia's fraud, breaches of contract, violations of consumer protection laws, and unjust enrichment.

---

[3] This is on top of the "convenience" fees consumers pay per ticket to services like Fandango and Atom where Sinemia sends them to actually purchase the tickets.  Although not the subject of this lawsuit, Sinemia hardly goes out of its way to disclose that consumers will incur these fees either.  Collectively, the convenience and processing fees add up to approximately $3.60 per ticket obtained as part of a Sinemia subscription, eliminating the value in or incentive to purchasing a Sinemia plan altogether.

## PARTIES

### Plaintiff Paul Early (California)

10.     Plaintiff Paul Early ("Early") is an adult individual residing in California. Plaintiff Early joined Sinemia on or about August 2, 2018.  He paid $191.88 for a year of a movie plan for two movies per month for two people.  Early also paid a $9.99 fee for instant activation. Prior to purchasing his movie plan, Sinemia did not disclose the processing fees.

11.     The first five times Early saw a movie with Sinemia he was only charged the $1.50 third-party convenience fees.

12.     On October 22, 2018, Plaintiff Early purchased two tickets for a movie and was charged a $1.80 processing fee per ticket ($3.60 total).  The app would not let Plaintiff Early purchase the tickets without accepting this fee.

13.     Plaintiff Early went to another movie on November 6, 2018, and was once again charged the $1.80 processing fee per ticket ($3.60 total).  He went to yet another movie on November 8, 2018 and was charged another $1.80 processing fee.

14.     Plaintiff Early contacted Sinemia customer service about cancelling the remainder of his movie plan and requested a refund.  Sinemia did not respond.  Plaintiff Early would not have purchased his Sinemia movie plan had he known of the processing fees, or he would have paid less for it.  The movie plan Early is now stuck with has lost significant value with the imposition of the processing fees.

15.     Early has been injured as a result of Defendant's conduct as described herein.

### Plaintiff Jonathan Gollner (Illinois)

16.     Plaintiff Jonathan Gollner ("Gollner") is an adult individual residing in Illinois. Plaintiff Gollner signed up for Sinemia on or about September 12, 2018.  He paid $119.88 for

an annual plan for three movies per month. His account was activated on September 26, 2018. Prior to purchasing his movie plan, Sinemia did not disclose the processing fees.

17. The first time he used Sinemia on October 12, 2018, he was not charged the $1.80 processing fee.

18. On his second use of Sinemia on October 23, 2018, however, Sinemia charged a $1.80 processing fee per ticket. On his third use of Sinemia on October 24, 2018, Sinemia again charged a $1.80 processing fee.

19. Plaintiff Gollner would not have purchased his Sinemia movie plan had he known of the processing fees, or he would have paid less for it.

20. Plaintiff Gollner has been injured as a result of Defendant's conduct as described herein.

**Defendant Sinemia Inc.**

21. Defendant Sinemia Inc., is incorporated in Delaware with its headquarters and principal place of business in Los Angeles, California.

22. Sinemia operates a website and a smartphone app which offers movie theater ticket subscriptions.

## JURISDICTION AND VENUE

23. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) of the Class Action Fairness Act because this is a class action in which: (1) there are at least 100 Class members; (2) the combined claims of Class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and (3) Plaintiffs and Defendant are domiciled in different states.

24.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiffs suffered injuries as a result of Defendant's acts in this District, Defendant is authorized to conduct business in this District, Defendant resides in this District and Defendant is subject to personal jurisdiction in this District, a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendant has consented to venue in this District.

25.     The Court has personal jurisdiction over Sinemia because its principal place of business is within this District and it has sufficient minimum contacts in Delaware to render the exercise of jurisdiction by this Court proper and fair.

## FACTUAL ALLEGATIONS

26.     Sinemia is a subscription-based movie ticketing service that offers monthly subscription plans that allow subscribers to see a certain number of movies per month for a set monthly fee.

27.     For example, current packages include three movie tickets per month for $8.99 per month.  Another package offers "A Movie Every Weekday" for $23.99 per month.

28.     At any given time it offers many different subscription options, with the price varying depending on the number of movies per month and the level of restrictions on the movies customers can see (for example some packages are only weekdays, some packages do not include 3D or IMAX movies).

29.     Additionally, customers may choose either individual or family plans.  Family plans allow subscribers to get more than one ticket to the same movie so they can go with family members or friends.

30.     Subscribers also have the option of paying each month or paying for an entire year upfront.  If they choose to pay monthly there is an "initiation fee" typically ranging from

$19.99-$29.99 depending on the package. The initiation fee is waived if a subscriber is willing to pay for an entire year upfront. Many consumers choose a yearly plan in order to avoid the initiation fee.

31.     Sinemia was founded in 2014 and has expanded its services to include the United States, Canada, the United Kingdom, Turkey, and Australia.

32.     When Sinemia first launched, it followed the model introduced by its competitor (and household name) MoviePass where subscribers would receive a debit card in the mail and then could go to the movie theater of their choice and pay for the ticket using the debit card.

33.     Earlier this year, however, Sinemia stopped issuing the debit cards and switched to a card-less model where customers can only purchase tickets through the Sinemia app.

34.     Now, subscribers select the movie and theater they want on the Sinemia app which then sends them to a third-party such as Fandango or Atom to purchase the tickets. These services each charge their own "convenience" fees, generally around $1-2 per ticket.

35.     Within the last several months, Sinemia has begun charging its own "processing fee" of $1.80 per ticket for tickets purchased through the app. This fee was not a part of the bargain with its customers. It unilaterally introduced this fee and never disclosed to consumers that it would do so. Consumers purchased movie plans from Sinemia with the expectation that the base rate (monthly or yearly price) would be the extent of the money that they would have to pay for their Sinemia movie plan.

36.     Sinemia's marketing and website advertise only a monthly price for each subscription package without any mention of additional fees.   Rather, Sinemia consistently represents that the monthly price is all subscribers will have to pay in order to see their allotted number of movies:





## Fall Season Promo

Monthly   Yearly

| Elite | Elite | Classic | Classic | Classic |
|---|---|---|---|---|
| **3** | **2** | **A Movie Every Weekday** | **3** | **1** |
| Movie tickets per month | Movie tickets per month | One movie ticket every weekday per month | Movie tickets per month | Movie ticket per month |
| Fall Promo | Fall Promo | Fall Promo | Fall Promo | Fall Promo |
| $14.99 / month | $9.99 / month | $23.99 / month | $8.99 / month | $3.99 / month |
| Instead of $34.99 | Instead of $24.99 | Instead of $89.99 | Instead of $32.99 | Instead of $12.99 |
| Every feature in Classic plan, including 3D and an experience in IMAX-4DX and more. | Every feature in Classic plan, including 3D and an experience in IMAX-4DX and more. | Any Theater No blackout days Advance Ticket Option | Any Theater No blackout days Advance Ticket Option | Any Theater No blackout days Advance Ticket Option |
| SELECT | SELECT | SELECT | SELECT | SELECT |
| Billed annually No initiation fee | Billed annually No initiation fee | Billed annually No initiation fee | Billed annually No initiation fee | Billed annually No initiation fee |

### More Access

With a Sinemia membership, you can get 3 movie tickets for less than the price of one ticket!



*See* https://www.sinemia.com/ (last visited Nov. 8, 2018).



*See* https://milled.com/sinemia-com/get-your-3-free-movie-tickets-for-only-9-99-join-sinemia-today-Q5DbsNnLHDOO_pzx (last visited Nov. 8, 2018).

37.     Indeed, as depicted above, Sinemia represented that the tickets obtained for movies under its movie plans are "free movie tickets"—that is, it advertised and marketed its platform as consisting only of the cost for the movie plan itself ("one low monthly cost"), and made clear that the ticket you obtain to go see movies are free, i.e., no fees or charges.

38.     The "About" section of Sinemia's Facebook page confirms that consumers will only pay once for the service: it states that "Sinemia is a social platform for moviegoers and a monthly subscription-based service that provides movie tickets for ***one*** low monthly fee."[4]

39.     As a result of Sinemia's representations, subscribers reasonably understood these monthly prices to be the total and only cost for their monthly allotment of movie tickets.

40.     Subscribers either subscribed to Sinemia before the company added the $1.80 processing fee or subscribed after and did not realize the fee existed because Sinemia not only makes no mention of it but repeatedly states that subscribers get "[X number of] movie tickets" for the monthly price.

41.     The only mention of any additional fees in Sinemia's Terms and Conditions, a link to which is buried at the bottom of its website, states as follows:

> Advance tickets created using Sinemia app must be purchased within 2 hours. Advance Tickets can be created for a movie that will take place within the span of the member's 30 days membership period, There aren't any limitations on how many advance tickets can be ordered in a 30 days membership period (within the ticket limits of the specific subscription) however the second advance ticket cannot be created before the showtime of the existing advance ticket has passed. The advance ticket online convenience fee and/or processing fee are not covered by Sinemia. Sinemia only covers the cost of the movie tickets.[5]

42.     Although this language mentions the processing fee, it is worded in such a way as to lump it in with the convenience fee and imply that it is not charged by Sinemia and is for something in addition to the movie ticket.  Rather, the processing fee is charged by Sinemia and is simply tacked on arbitrarily and for no additional product or service besides getting the movie tickets consumers already paid for.

---

[4] https://www.facebook.com/pg/SinemiaApp/about/ (last visited Nov. 8, 2018).
[5] https://www.sinemia.com/terms, Section 27.18 (last visited Nov. 8, 2018).

43.     Indeed, the language "and/or processing fee" was only added to the Terms and Conditions on September 20, 2018.

44.     Many members of the proposed class subscribed to Sinemia plans and paid for an entire year prior to Sinemia's unilateral imposition of the processing fee in the middle of their subscription period.  These individuals are stuck with the remainder of several hundred dollar movie plans that now incur an additional $1.80 charge for every movie ticket they thought they already paid for.

45.     Those members of the proposed class who subscribed after Sinemia added the processing fee only did so in reliance on Sinemia's misrepresentations about its pricing since Sinemia did not disclose the processing fee.

46.     Sinemia's unilateral addition of and subsequent failure to disclose the processing fee means that subscribers now pay significantly more to see their allotted number of movies each month.

47.     The amount subscribers pay beyond what they expected to pay when subscribing depends on how many movies they see.  However, an extra $1.80 is a significant amount relative to the price of a movie ticket.

48.     For example, a customer who subscribes to Sinemia's "A Movie Every Weekday" plan expects to pay the monthly price of $23.99 advertised by Sinemia.  If the subscriber were to in fact see one movie every weekday, the total price paid to Sinemia would be more like $59.99 per month.  More than double what Sinemia advertised.[6]

49.     Scores of virtually identical complaints about this exact conduct by Defendant can be found on the internet from consumers across the country.  A small sample of the

---

[6] When the third-party convenience fees charged by companies like Fandango and Atom are factored in, the total paid by the customer in this example is approximately $89.99 per month.

countless consumer complaints about Defendant's processing fees are reproduced verbatim below [all *sic*]:

### From the Better Business Bureau[7]

- **David L. On Oct. 23, 2018**
  . . . Bait and switch. I'm an annual member, prepaid a year for around $179 for 3 tickets a month. Two months in, they began charging everyone an extra $1.80 "processing fee" every time I reserve a ticket, which I essentially already paid for. Note this is on top of the "convenience" fees most of us already didn't know we'd be paying. After contacting them on Twitter (which took days to figure out since their phone number is dead and their inbox returned as "full"), we were pointed to the terms and conditions where it left room for them to start charging me this fee. . . . They refused to refund a cent . . . I have to go through the hassle of a chargeback for my full membership through my credit card, and heed my warning, so you don't have to, as well.

- **Cort on Nov. 5, 2018**
  I feel the marketing is deceptive....they require you to use online ticket sellers (with fees) AND then SInemia charges you an additional 1.80 (per ticket) for using their "cardless" system (which you have no choice but to use....I wish I could get a refund

### From Trustpilot[8]

- **Andrew on Nov. 2, 2018**
  I wish I could leave less than 1 star, frankly. Yeah, for 9.99 a month for 3 movies is a decent deal. Except you have a ridiculous $20 fee to pay monthly. Then, I am supposed to get a card, it's been nearly two months and it still hasn't arrived. Because of the lack of card, I paid the extra 9.99 for the Cardless feature. Now I am being charged an extra 1.80 for an advance ticket, on top of the 50¢ my theatre charges for e-ticketing, even though I have no choice because my card is no where to be seen. Contact customer service, you say? I have. Seven emails, three contact forms filled out, and two Facebook messages. No reply to any! I thought MoviePass customer service was bad, but I'm fairly certain Sinemia has the worst customer service in the world. Also, the app is utterly worthless and doesn't work half of the time.

---

[7] https://www.bbb.org/us/ca/west-hollywood/profile/online-retailer/sinemia-inc-1216-883526 (last visited on Nov. 8, 2018).
[8] https://www.trustpilot.com/review/www.sinemia.com (last visited on Nov. 8, 2018).

## Google Play[9]

- **Newton C. on Nov. 6, 2018**
  Sinemia never sent me a physical card despite precharging me for a year of membership. They then introduced a $1.80 processing fee for all purchases using the careless approach in the app. This is a blatant price hike on a prepaid service. Customer service refuses to make it right. Avoid at all costs.

- **Matthew S. on Nov. 4, 2018**
  There is a new $1.80 fee added now for using cardless option, but there is no other option. Sinemia confirmed that they will not send a physical card. With the new fee it is almost the same as a regular ticket price. There is no option to receive my money back, so I'm stuck for the next 8 months. If you are considering getting this, I would suggest going month to month. Because, who knows what they will change next.

- **Kyle T. on Nov. 1, 2018**
  They added 1.80 fee per movie to use cardless, which is the only option. There is no way to avoid this fee and it is in addition the subscription you already paid and agreed to. The cardless option was already bad as you had to pay the theaters a convenience fee to order the ticket in advanced. There's no advantage to this service, it's a worse experience than what MoviePass was and is a complete waste of time. Don't sign up for the service and if you have, file a chargeback.

50.    Plaintiffs and other Class members have been damaged by Sinemia's misrepresentations and "processing fees" in at least the following ways:

(a)    Plaintiffs and Class members' subscriptions to Sinemia's service are devalued.

(b)    Had Sinemia been honest and revealed the fees to Plaintiffs and members of the proposed class when they subscribed, Plaintiffs and members of the proposed class would not have subscribed to, or would have paid less for their subscriptions.

---

[9] https://play.google.com/store/apps/details?id=com.sinemia.app&hl=en&showAllReviews=true (last visited on Nov. 8, 2018).

51.     The processing fee notwithstanding, customers are also treated to poor customer service from Sinemia.[10] This includes frequent complaints that Sinemia hid the fact that it had stopped issuing cards from new subscribers who spent months waiting for a card that never came.

## CLASS ALLEGATIONS

52.     Plaintiffs incorporate each of the preceding allegations by reference as though fully set forth at length.

53.     Plaintiffs bring this lawsuit under Federal Rule of Civil Procedure 23 as representatives of the following classes:

### California Class

All persons in the state of California who purchased a Sinemia movie plan that was subjected to the imposition of an undisclosed processing fee.

### Illinois Class

All persons in the state of Illinois who purchased a Sinemia movie plan that was subjected to the imposition of an undisclosed processing fee.

54.     The above classes may be referred to collectively as the "Class." Plaintiffs reserve the right to modify or amend these definitions if discovery and further investigation reveals that the classes should be expanded, divided into additional subclasses, or modified in any other way.

---

[10]https://www.businessinsider.com/moviepass-competitor-sinemia-is-a-great-deal-but-has-hidden-fees-2018-11?r=UK&IR=T (last visited Nov. 9, 2018) ("Sinemia has emerged as a cheap MoviePass alternative, but it has hidden fees and awful customer service").

55.     The following persons and entities are excluded from the class: (1) Sinemia, its officers, directors, employees, subsidiaries, and affiliates; (2) all judges assigned to this case and any members of their immediate families; and, (3) the parties' counsel in this litigation.

56.     The potential Class and sub-classes are so large that joinder of all members would be impracticable. Additionally, there are questions of law or fact common to the class, the claims or defenses of the representative parties are typical of the claims or defenses of the class, and the representative parties will fairly and adequately protect the interests of the class.

57.     This action satisfies all requirements of FED. R. CIV. P. 23, including numerosity, commonality, typicality, adequacy, predominance and superiority.

58.     **Numerosity:** Upon information and belief, at least thousands of Class Members purchased Sinemia movie plans that were subjected to the processing fee described herein. Class members are accordingly so numerous that joinder is impracticable.

59.     **Typicality:** Plaintiffs' claims are typical of the claims of all class members in that Plaintiffs, like all Class Members, purchased Sinemia movie plans that they would not have purchased, or would have paid substantially less for, had they known that Sinemia would charge processing fees (i.e., more than simply the monthly or yearly subscription cost) for each movie ticket obtained under the movie plan.

60.     **Adequacy:** Plaintiffs will fairly and adequately represent and protect the interests of the class because Plaintiffs have no conflicts of interest that would be antagonistic to those of the other Class members and are committed to vigorously prosecuting this case. Plaintiffs seek no relief that is antagonistic or adverse to the members of the Class, and the damages Plaintiffs have suffered are typical of other Class members. Plaintiffs have retained competent counsel experienced in the prosecution of consumer protection class actions.

61.     **Commonality:** the claims made by Plaintiffs meet the commonality requirement because they present shared questions of law and fact, and resolving these questions will resolve the class-wide litigation. Questions of law and fact common to the Class include:

a.      Whether Sinemia unlawfully unilaterally changed the terms of its contracts with consumers that purchased Sinemia move plans;

b.      Whether Sinemia's practice of charging processing fees for movie tickets obtained under its movie plans breached its contracts with movie plan purchasers:

c.      Whether Sinemia's conduct alleged herein is in violation of state consumer protection laws;

d.      Whether Sinemia's practice of charging processing fees deprived the Class members of the benefits of their contracts;

e.      Whether Sinemia's processing fees diminished the value of or otherwise devalued consumers' Sinemia movie plans;

f.      Whether Sinemia's conduct injured the Class Members;

g.      Whether Class Members are threatened with irreparable harm and/or are entitled to injunctive and other equitable relief and, if so, the nature of such relief; and

h.      Whether the Class Members are entitled to payment of equitable monetary relief and/or damages plus interest thereon, and if so, the amount of such relief.

62.    **Predominance:** The above (and other) common questions of law and fact predominate over any questions that may affect only individual class members, because Sinemia acted on grounds generally applicable to the Class as a whole.

63.    **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Because the amount of each individual Class Member's claim is small relative to the complexity of the litigation, and because of Sinemia's financial resources, no Class Member is likely to pursue legal redress individually for the violations detailed in this Complaint.  Individualized litigation would significantly increase the delay and expense to all parties and to the Court and would create the potential for inconsistent and contradictory rulings.  By contrast, a class action presents fewer management difficulties, allows claims to be heard which would otherwise go unheard because of the expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

64.    Class certification is also appropriate under rule 23(b)(1) and (b)(2) because: the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual class members, which would establish incompatible standards of conduct for Sinemia; the prosecution of separate actions by individual class members would create a risk of adjudications that would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests; Sinemia acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the members of the Class as a whole; and the claims of Class Members include common issues that are appropriate for certification.

## CLAIMS FOR RELIEF

### COUNT I
### FRAUD/FRAUDULENT CONCEALMENT
**(On Behalf of Plaintiffs and the California and Illinois Classes)**

65.      Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

66.      Plaintiffs bring this claim individually and on behalf of the California and Illinois Classes pursuant to the laws of those states.

67.      Prior to Plaintiffs' purchase of Defendant's movie plan subscriptions, Defendant did not conspicuously disclose and omitted to tell Plaintiffs and members of the Class that Defendant would charge a processing fee for each ticket obtained under the movie plans. Defendant knew Plaintiffs and Class members relied upon this material omission, and Defendant made failed to disclose that it would charge the processing fees in order to induce Plaintiffs and members of the Class to act, i.e., to pay for a movie plan subscription.

68.      This omission was material to Plaintiffs such that, had Plaintiffs known that they would have to pay the processing fees, Plaintiffs would not have bought their movie plan subscriptions, or would have purchased them at a lesser price. But Plaintiffs did not know the true facts, and relied upon the Defendant's statements (and omissions) as to pricing for the plans.

69.      Defendant concealed and failed to disclose to Plaintiffs and Class members that, despite its affirmative representations regarding price, it would charge processing fees in excess of the flat movie plan price.

70.      As a result of Defendant's fraud, Plaintiffs and members of the Class were induced into the purchase of services that they otherwise would not have purchased, or would have paid less, and have suffered injury, harm and damages as described herein.

## COUNT II
## BREACH OF CONTRACT
**(On Behalf of Plaintiffs and the California and Illinois Classes)**

71.     Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

72.     Plaintiffs bring this claim individually and on behalf of the California and Illinois Classes pursuant to the laws of those states.

73.     Plaintiffs and Defendant entered into contracts for the purchase of Sinemia movie plans.

74.     Plaintiffs have fully performed all material covenants, conditions and obligations that they were required to perform by reason of their contracts, except to the extent waived, excused, or made impossible by Defendant's breaches of the contract.

75.     On the other hand, the Plaintiffs never agreed that Defendant could unilaterally impose a processing fee. This term is not part of the parties' contracts with one another, and Defendant did not have the right to act as such under the terms of its agreements with Plaintiffs.

76.     Defendant's conduct frustrated the entire purpose of the contract and the reasons for why Plaintiffs contracted with Defendant in the first place, and materially breached its contracts with Plaintiffs, which had the direct and proximate effect of causing damages to Plaintiffs in an amount to be proven at trial, plus interest allowable under applicable law.

77.     Plaintiffs demand an award of any consequential damages, reasonable attorneys' fees and costs, and any other relief afforded under the laws of California and Illinois.

## COUNT III
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (On Behalf of Plaintiffs and the California and Illinois Classes)

78.     Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

79.     Plaintiffs bring this claim individually and on behalf of the California and Illinois Classes pursuant to the laws of those states.

80.     A covenant of good faith and fair dealing is implied in every contract and imposes upon each party a duty of good faith and fair dealing in its performance of the contract. Common law calls for substantial compliance with the spirit, not just the letter, of a contract in its performance. The duty to act in good faith and deal fairly requires adherence to commercial norms and prevents a contracting party from acting in contravention of the counterparty's objectively reasonable expectations arising from the agreement.

81.     Sinemia breached the covenant of good faith and fair dealing when it added processing fees that it failed to disclose.

82.     All conditions required for Plaintiffs' and the Class members' performance under the agreement occurred.   Plaintiffs' and Class members' were uniformly and materially overcharged pursuant Sinemia's breaches.

83.     As a direct and proximate result of Sinemia's breaches of the covenant of good faith and fair dealing, Plaintiffs and Class members have been damaged in an amount to be proven at trial.

**COUNT IV**
**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**CAL. BUS. & PROF. Code §§ 17200, *et seq*. ("UCL")**
**(On Behalf of Plaintiff Early and the California Class)**

84.    Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

85.    Plaintiff Early brings this claim under the UCL—and each claim under each of its prongs, e.g., unlawful, unfair, fraudulent—individually and on behalf of the California Class.

86.    The UCL proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." CAL. BUS. & PROF. CODE § 17200.

**Unlawful Conduct**

87.    Sinemia's conduct is unlawful, in violation of the UCL, because its conduct contravenes the legislatively declared policy against unfair methods of business competition and violates other laws as set forth herein, including: the California CLRA and the Illinois consumer protection statutes.

**Unfair Conduct**

88.    As to Plaintiff Early and the California Class, Sinemia acted in an unethical, unscrupulous, outrageous, oppressive, and substantially injurious manner by unfairly adding hidden fees that it did not disclose to consumers.

89.    The gravity of harm resulting from Sinemia's unfair conduct outweighs any potential utility. The practice of adding hidden undisclosed fees—harms the public at large and is part of a common and uniform course of wrongful conduct.

90.     The harm from Sinemia's conduct was not reasonably avoidable by consumers because Sinemia failed to disclose that it would add the processing fees to each ticket obtained through its movie plans.

91.     There were reasonably available alternatives that would further Sinemia's business interests of attracting and retaining customers while maintaining profitability, such as (1) disclosing the processing fees; or (2) increasing the base price of the movie plans rather than charging separate hidden fees.

### Fraudulent Conduct

92.     Sinemia's conduct is fraudulent in violation of the UCL because it is likely to deceive a reasonable consumer in that Sinemia added processing fees without disclosing the fees and while advertising prices in such a way that consumers believed that to be the total price.

93.     Plaintiff Early and the California Class suffered injury in fact, including lost money, as a result of being charged significantly more for movie tickets under their movie plans than Sinemia advertised.

94.     Through its unlawful, unfair, and fraudulent conduct, Sinemia acquired money that Plaintiff Early and the California Class once had an ownership interest in.

95.     Plaintiff Early accordingly seeks appropriate relief, including restitution under the UCL.  Plaintiffs also respectfully seek reasonable attorneys' fees and costs under applicable law, including under California Code of Civil Procedure § 1021.5.

### COUNT V
### VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT
#### CAL. CIV. CODE §§ 1750, *et seq.* ("CLRA")
#### (On Behalf of Plaintiff Early and the California Class)

96.     Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

97.     Plaintiff Early brings this claim individually and on behalf of the California Class.

98.     Sinemia is a "person" within the meaning of CAL. CIV. CODE §§ 1761(c) and 1770, and provided "services" within the meaning of CAL. CIV. CODE §§ 1761(b) and 1770.

99.     Sinemia's acts and practices, as alleged in this complaint, violate the CLRA, CAL. CIV. CODE §§ 1770(a)(5), (7), and (9) because they consist of unfair methods of competition and unfair and deceptive acts and practices in connection with transactions—namely, the sale of movie plans with hidden or undisclosed fees which amounts to a fraudulent bait and switch scheme.  Specifically, Sinemia represented that the monthly or yearly price for a movie plan was the total customers would have to pay while failing disclose there were additional hidden fees.

100.    Sinemia's misrepresentations and omissions were material.  Had Plaintiffs known that movie plans incurred an additional $1.80 fee per ticket, they would never have purchased their plans or would have paid substantially less for them.

101.    Pursuant to California Civil Code § 1782(a), individually and on behalf of the Class, Plaintiff Early sent a CLRA notice to Sinemia on November 9, 2018. Plaintiff Early sent the CLRA notice via certified mail, return receipt requested, to Sinemia's principal places of business, advising Sinemia that it is in violation of the CLRA and must correct, replace or otherwise rectify the conduct alleged to be in violation of CAL. CIV. CODE § 1770. By this cause of action, Plaintiff only seeks non-monetary relief presently.  In the event the relief requested has not been provided within 30 days, Plaintiff will amend this Complaint to include a request for monetary damages pursuant to the CLRA.

102.    Plaintiff Early's CLRA venue declaration is attached as **Exhibit "A"** hereto in accordance with CAL. CIV. CODE § 1780(d).

<u>COUNT VI</u>
## VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT ("Illinois CFA")
### 815 ILL. COMP. STAT. §§ 505/1, *et seq.*
#### (On Behalf of Plaintiff Gollner and the Illinois Class)

103.   Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

104.   Plaintiff Gollner brings this Count on behalf of herself and on behalf of the Illinois class members.

105.    Gollner and Illinois class members are "consumers" as that term is defined in 815 ILL. COMP. STAT. § 505/1(e).

106.    Defendant's acts or practices as set forth above occurred in the conduct of "trade" or "commerce" under 815 ILL. COMP. STAT. § 505/2.

107.    Defendant's acts and practices are unfair in at least the following respects: Defendant knowingly sold Gollner and Illinois class members movie plans that contained hidden fees that were undisclosed and amounted to a bait and switch, as set forth herein.

108.    Defendant's acts and practices are contrary to Illinois law and policy and constitute immoral, unethical, oppressive, and unscrupulous business practices that caused substantial injury to Gollner and Illinois Class members. The gravity of the harm resulting from Defendant's unfair conduct outweighs any potential utility of the conduct. Sinemia's conduct harms the public at large and is part of a common and uniform course of wrongful conduct. There are reasonably available alternatives that would further Defendant's business interests of increasing sales. The harm from Defendant's unfair conduct was not reasonably avoidable by consumers.

109.   Defendant's acts and practices are deceptive because Defendants willfully failed to disclose and actively concealed the hidden fees; made affirmative representations about the movie plans' pricing structures that were false when made; represented that the movie plans have characteristics, uses, benefits, and qualities which they do not have; represented that movie plans are of a particular standard and quality when they are not; advertised the movie plans with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

110.   Defendant was aware that its conduct was deceptive in employing a bait and switch scheme relating to the processing fees.

111.   Defendant's conduct and false representations/omissions were material to Gollner and Illinois class members.

112.   Defendant used deceptive acts and practices with intent that consumers would rely upon Defendant's representations and omissions in selecting and purchasing their movie plans.

113.   Defendants intentionally and knowingly misrepresented or omitted material facts regarding the movie plans with an intent to mislead Gollner and Illinois Class members.

114.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Gollner and Illinois class members, about the nature of and the true value of the movie plans.

115.   Defendant knew or should have known that its conduct violated the Illinois CFA.

116.    Defendant owed Gollner and Illinois Subclass members a duty to disclose the hidden fees because it possessed exclusive knowledge that it would charge them and about the pricing structure for the movie plans.

117.    Because of Sinemia's concealment and misrepresentations, the value of the movie plans has greatly diminished and Gollner and Illinois cass members overpaid for their movie plans.

118.    Gollner and Illinois class members suffered ascertainable loss caused by Defendant's misrepresentations and concealment of material information relating to the movie plans. Gollner and Illinois class members would have paid less for their movie plans or would not have purchased them at all but for Defendant's violations of the Illinois CFA.

119.    As a direct and proximate result of Defendant's violations of the Illinois CFA, Gollner and Illinois class members have suffered injury in fact and actual damage.

120.    Pursuant to 815 ILL. COMP. STAT. § 505/10a(a), Gollner, individually and on behalf of Illinois class members, seeks actual damages as well as punitive damages (pursuant to 815 ILL. COMP. STAT. § 505/10a(c)), because Defendant acted with fraud and malice.

121.    Gollner and Illinois class members also seek an order enjoining Defendant's unfair and deceptive acts or practices, reasonable attorneys' fees, and any other just and proper relief available under 815 ILL. COMP. STAT. § 505/1, *et seq.*

### COUNT VII
### VIOLATIONS OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT ("Illinois DTPA")
### 815 ILL. COMP. STAT. §§ 510/1, *et seq.*
### (On Behalf of Plaintiff Gollner and the Illinois Class)

122.    Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

123.   Plaintiff Gollner brings this Count on behalf of herself and on behalf of the Illinois class members.

124.   Defendant is a "person" as defined in 815 ILL. COMP. STAT. § 510/1(5).

125.   In the course of Defendant's business, it willfully failed to disclose and actively concealed information about the pricing structure of its movie plans, namely the hidden processing fees, and it engaged in bait and switch scem. Accordingly, Defendant engaged in deceptive trade practices as defined in 815 ILL. COMP. STAT. § 510/2.

126.   Defendant intended for Gollner and Illinois class members to rely on its aforementioned unfair and deceptive acts and practices, including the misrepresentations and omissions alleged hereinabove.

127.   Defendant's actions as set forth above occurred in the course of its business.

128.   Defendant knew or should have known that its conduct violated the Illinois DTPA.

129.   Defendants possessed exclusive knowledge the true nature of the pricing for its movie plans and about the processing fees, and thus had a duty to disclose the same.

130.   Defendant's conduct and false representations and omissions were material to Gollner and Illinois class members in connection with their purchases of movie plans.

131.   Gollner and Illinois class members suffered ascertainable loss caused by Defendant's misrepresentations and its concealment of and failure to disclose material information. Class members who purchased movie plans either would have paid less for them or would not have purchased them at all but for Defendant's violations of the Illinois DTPA.

132.   Defendant's conduct alleged herein proximately caused injuries to Gollner and Illinois class members.

133.   Gollner and Illinois class members were injured as a result of Defendant's conduct. Gollner and class members overpaid for their movie plans and did not receive the

benefit of their bargain. These injuries were the direct and natural consequence of Defendant's misrepresentations and omissions in violation of the Illinois DTPA.

134.     Pursuant to 815 ILL. COMP. STAT. § 510/3, Gollner and Illinois class members are entitled to an award of injunctive relief to prevent Defendant's deceptive trade practices.

135.     Because Defendant's conduct was willful, Plaintiff is entitled to an award of reasonable attorneys' fees and costs.

## COUNT VIII
## UNJUST ENRICHMENT
### (On Behalf of Plaintiffs and the California and Illinois Classes)

136.     Plaintiffs repeat, reallege and incorporate by reference each of the foregoing allegations as though fully set forth herein.

137.     Plaintiffs bring this claim individually and on behalf of the California and Illinois Classes pursuant to the laws of those states.

138.     This claim is pleaded in the alternative to Plaintiffs' contract claim.

139.     As the intended and expected result of its conscious wrongdoing, Defendant has profited and benefited from the purchase of movie plans by Plaintiffs and the Class that are devalued or otherwise worth less due to the processing fees. Defendant has also profited and benefited from the processing fees themselves, which Plaintiffs and Class members did not know they would have to pay in signing up for movie plans and never agreed to pay.

140.     Defendant has voluntarily accepted and retained these profits and benefits, with full knowledge and awareness that, as a result of Defendant's misconduct alleged herein, Plaintiffs and the Class were not receiving services of the quality, nature, fitness, or value that had been represented by Defendant, and that a reasonable consumer would expect. Specifically, Plaintiffs and the Class members expected that they would only pay the price of their movie

plans—not the processing fee that Defendant has begun charging in a money-grab, bait and switch ploy.

141.    Defendant has been unjustly enriched by its fraudulent, deceptive, unlawful, and unfair conduct, and withholding of benefits and unearned monies from Plaintiffs and the Class, at the expense of these parties.

142.    Equity and good conscience militate against permitting Defendant to retain these profits and benefits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs individually and on behalf of all others similarly situated, pray for relief and judgment against Defendant, as follows:

A.      For an order certifying the proposed class, appointing Plaintiffs and their counsel to represent the proposed class and notice to the proposed class to be paid by Defendant;

B.      For damages suffered by Plaintiffs and the proposed class;

C.      For restitution to Plaintiffs and the proposed class of all monies wrongfully obtained by Defendant;

D.      For injunctive relief requiring Defendant to cease and desist from engaging in the unlawful, unfair and/or deceptive practices alleged in the Complaint;

E.      An order awarding declaratory relief, retrospective and prospective injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and injunctive relief to remedy Defendant's past conduct;

F.      For Plaintiffs' reasonable attorneys' fees, as permitted by law;

G.      For Plaintiff's costs incurred;

H.    For pre-judgment and post-judgment interest at the maximum allowable rate on any amounts awarded; and

I.    For such other and further relief that this Court deems just and proper under equity or law, including the award of punitive damages.

## JURY DEMAND

Plaintiffs demand a trial by jury on all counts so triable.

Dated: November 9, 2018

Respectfully submitted,

By: _____

Robert J. Kriner, Jr. (Del. Bar No. 2546)
Tiffany J. Cramer (Del. Bar No. 4998)
CHIMICLES & TIKELLIS LLP
2711 Centerville Road Suite 201
Wilmington, DE 19808
Tel.: 302-656-2500
Fax: 302-656-9053
rjk@chimicles.com
tjc@chimicles.com

Benjamin F. Johns (PA ID No. 201373)
Andrew W. Ferich (PA ID No. 313696)
CHIMICLES & TIKELLIS LLP
361 W. Lancaster Avenue
Haverford, PA 19041
610-642-8500
610-649-3633 (Fax)
bfj@chimicles.com
awf@chimicles.com

*Counsel for Plaintiffs and the Putative Class*