## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAMUEL FASANO, DAVID NEWMAN, MATTHEW WALTERS, SHARON WALTERS, AASHISH JAGINI, HARSHITH D'MELLO, JASPREET KHERA, ANDREW THAL, CARLY DAN, SUSAN PAI, and CHELSEA FRANKLIN, individually and on behalf of all others similarly situated, | CASE NO. 1:18-cv-01774-MN |
| Plaintiffs, | |
| v. | CLASS ACTION |
| SINEMIA INC., | JURY TRIAL DEMANDED |
| Defendant. | |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Samuel Fasano, David Newman, Matthew Walters, Sharon Walters, Aashish Jagini, Harshith D'Mello, Jaspreet Khera, Andrew Thal, Carly Dan, Susan Pai, and Chelsea Franklin ("Plaintiffs"), on behalf of themselves and proposed classes similarly situated persons, submit this First Amended Class Action Complaint against Defendant Sinemia Inc. (hereinafter "Sinemia" or "Defendant"), and upon information and belief and investigation of counsel, state as follows:

## NATURE OF THE CASE

1.     Sinemia offers subscription-based movie ticket plans whereby consumers can pay for a monthly or yearly plan that allows them to see a certain number of movies per month. Sinemia, however, has essentially become a bait-and-switch scheme: it lures consumers in by convincing them to purchase a purportedly cheaper movie subscription, and then adds undisclosed fees that make such purchases no bargain at all.  Sinemia fleeces consumers with

an undisclosed processing fee each time a plan subscriber goes to the movies using Sinemia's service.

2.    Like many industries, the movie theater ticket business is changing with the proliferation of websites and smartphone apps.  Starting most notably with MoviePass, consumers now have the option of paying for subscription services that allow them to see either an unlimited or a specific number of movies per month at just about any theater they want. MoviePass started by offering subscribers the ability to see unlimited movies for a single monthly fee.

3.    Sinemia launched a service similar to MoviePass with the idea of being more financially sustainable.[1]  Sinemia's subscription packages are generally more expensive and offer less than an unlimited number of movies per month as compared to MoviePass.  For example, current Sinemia packages include three movie tickets per month for $7.99 per month. Another Sinemia package offers "A Movie Every Weekday" for $19.99 per month.[2]

4.    Sinemia's marketing leads potential subscribers to believe that the monthly price advertised is the all-in or total price they have to pay in order to see a certain number of movies.

5.    Plaintiffs and class members relied on Sinemia's representations regarding the monthly price in subscribing to the service, often paying for an entire year upfront in order to avoid an initiation fee.

6.    Unfortunately for Plaintiffs and members of the classes (defined below), Sinemia's apparent pricing is too good to be true.  Despite advertising that leads customers to

---

[1] *See* https://www.forbes.com/sites/jamos/2018/08/16/sinemia-tosses-rival-moviepass-subscribers-a-life-preserver/#7314479a6957 (last visited Feb. 25, 2019); https://finance.yahoo.com/news/moviepass-struggles-sinemia-intends-thrive-191923782.html (last visited Feb. 25, 2019).
[2] https://www.sinemia.com/new-plans (last visited Feb. 25, 2019).

believe that the monthly price is the total they have to pay, Sinemia adds hidden "processing fees," typically in the amount of $1.80 per movie ticket.

7.      The additional $1.80 per ticket charged by Sinemia dramatically changes the value proposition that customers thought they were getting from Sinemia.

8.      Sinemia knew that Plaintiffs and class members relied on its representations about pricing in marketing a service designed almost exclusively around the idea of saving people money on movie tickets.  Sinemia was aware of Plaintiffs' and class members' reliance on its representations when they entered into monthly and often year-long subscriptions.

9.      By this action and as a result of Sinemia's conduct (discussed below in more detail), Plaintiffs seek, on behalf of other similarly situated persons, damages and other relief arising from Sinemia's fraud, breaches of contract, violations of state consumer protection laws, and unjust enrichment.

## PARTIES

### Plaintiff Samuel Fasano (California):

10.      Plaintiff Samuel Fasano ("Fasano") is an adult individual residing in California. Plaintiff Fasano signed up for Sinemia on or about September 7, 2018.  He paid $119.88 for an annual plan for 3 movies per month. His account was activated on September 21, 2018. Prior to purchasing his movie plan, Sinemia did not disclose the processing fees to him.

11.      When using Sinemia on October 5, 2018, Sinemia charged a $1.80 processing fee per ticket. Plaintiff Fasano incurred an additional $1.80 charge on December 17, 2018.

12.      Plaintiff Fasano would not have purchased his Sinemia movie plan had he known of the processing fees, or he would have paid significantly less for it than he did.

13.     Plaintiff Fasano has been injured as a result of Defendant's conduct as described herein.

### Plaintiff David Newman (Pennsylvania)

14.     Plaintiff David Newman ("Newman") is an adult individual residing in Pennsylvania. Plaintiff Newman signed up for Sinemia on or around August 3, 2018. He paid $95.88 for an annual plan for two movies per month. He later switched to an annual plan for three movies per month on or around August 28, 2018, for which he paid $119.88. He was refunded the $95.88 he paid for the two movies per month plan on September 11, 2018. His account was activated on August 27, 2018. Prior to Newman purchasing his movie plan, Sinemia did not disclose the processing fees.

15.     When using Sinemia on October 22, 2018, Sinemia charged a $1.80 processing fee. Subsequent $1.80 charges occurred on October 23, 2018; October 24, 2018; November 19, 2018; and November 23, 2018.

16.     In addition, Plaintiff Newman purchased a physical card for $14.99 on November 29, 2018, in order to avoid additional charges.

17.     Plaintiff Newman would not have purchased his Sinemia movie plan had he known of the processing fees, or he would have paid significantly less for it than he did.

18.     Plaintiff Newman has been injured as a result of Defendant's conduct as described herein.

### Plaintiffs Matthew Walters and Sharon Walters (Ohio)

19.     Plaintiffs Matthew Walters and Sharon Walters (together, "Walters") are adult individuals residing in Ohio. The Walters Plaintiffs signed up for Sinemia on or around May 10, 2018. They each paid $83.88 for annual plans for two movies per month. Their accounts

4

were activated on August 14, 2018. Prior to the Walters purchasing their movie plans, Sinemia did not disclose the processing fees.

20.     When using Sinemia on November 5, 2018, Sinemia charged a $1.80 processing fee. The Walters incurred subsequent $1.80 charges on November 29, 2018 and January 26, 2019.

21.     In addition, on November 28, 2018, and on numerous other occasions, Plaintiffs' Sinemia cardless information was declined, forcing them to pay for movie tickets out of pocket.

22.     The Walters would not have purchased their Sinemia movie plans had they known of the processing fees, or they would have paid significantly less for it than they did.

23.     The Walters Plaintiffs have been injured as a result of Defendant's conduct as described herein.

**Plaintiff Aashish Jagini (New Jersey)**

24.     Plaintiff Aashish Jagini ("Jagini") is an adult individual residing in New Jersey. Plaintiff Jagini signed up for Sinemia on or around August 16, 2018. He paid $119.88 for an annual plan for three movies per month. His account was activated on August 29, 2018. Prior to Jagini purchasing his movie plan, Sinemia did not disclose the processing fees.

25.     When using Sinemia on September 21, 2018, Sinemia charged a $1.80 processing fee per ticket. Plaintiff Jagini incurred subsequent $1.80 charges on November 9, 2018; November 25, 2018; November 27, 2018; and December 5, 2018.

26.     Plaintiff Jagini would not have purchased his Sinemia movie plan had he known of the processing fees, or he would have paid significantly less for it than he did.

27.    Plaintiff Jagini has been injured as a result of Defendant's conduct as described herein.

**Plaintiff Harshith D'Mello (Texas)**

28.    Plaintiff Harshith D'Mello ("D'Mello") is an adult individual residing in Texas. Plaintiff D'Mello signed up for Sinemia on or around July 21, 2018.  He paid $215.88 for an annual plan for two movies per month. His account was activated on August 3, 2018. Prior to purchasing his movie plan, Sinemia did not disclose the processing fees.

29.    When using Sinemia to purchase a ticket on October 20, 2018, Sinemia charged a $1.80 processing fee per ticket. Plaintiff D'Mello incurred subsequent $1.80 charges on October 27, 2018; November 9, 2018; November 18, 2018; December 2, 2018; January 18, 2019; and January 26, 2019.

30.    Recently, Plaintiff D'Mello's account has been temporarily suspended due to recent undisclosed changes to the terms of his subscription, requiring subscribers to provide verified ID in order to re-enable their temporarily locked accounts.

31.    Plaintiff D'Mello would not have purchased his Sinemia movie plan had he known of the processing fees, or he would have paid significantly less for it than he did.

32.    Plaintiff D'Mello has been injured as a result of Defendant's conduct as described herein.

**Plaintiff Jaspreet Khera (New York)**

33.    Plaintiff Jaspreet Khera ("Khera") is an adult individual residing in New York. Plaintiff Khera signed up for Sinemia on or about September 4, 2018. He paid $119.88 for an annual plan for two movies per month in any format. His account was activated on September 17, 2018. Prior to purchasing his movie plan, Sinemia did not disclose the processing fees.

34.    When using Sinemia to purchase a ticket on November 13, 2018, Sinemia charged a $1.80 processing fee. Plaintiff Khera incurred subsequent $1.80 charges on November 16, 2018; December 14, 2018; December 17, 2018; and December 25, 2018.

35.    Plaintiff Khera would not have purchased his Sinemia movie plan had he known of the processing fees, or he would have paid significantly less for it than he did.

36.    Plaintiff Khera has been injured as a result of Defendant's conduct as described herein.

### Plaintiff Andrew Thal (Michigan)

37.    Plaintiff Andrew Thal ("Thal") is an adult individual residing in Michigan. Plaintiff Thal signed up for Sinemia on or about September 4, 2018. He paid $191.88 for an annual plan for two people. His account was activated on September 4, 2018, after paying $4.99 to have the cardless option activated instantly. Prior to purchasing his movie plan, Sinemia did not disclose the processing fees.

38.    When using Sinemia to purchase a ticket on October 19, 2018, Sinemia charged a $1.80 processing fee per ticket. Plaintiff Thal incurred an additional $1.80 charge on December 2, 2018.

39.    Plaintiff Thal would not have purchased his Sinemia movie plan had he known of the processing fees, or he would have paid significantly less for it than he did.

40.    Plaintiff Thal has been injured as a result of Defendant's conduct as described herein.

### Plaintiff Carly Dan (North Carolina)

41.    Plaintiff Carly Dan ("Dan") is an adult individual residing in North Carolina. Plaintiff Dan signed up for Sinemia on or about August 30, 2018.  She paid $119.88 for an

annual plan for three movies per month. Her account was activated on September 16, 2018. Prior to purchasing her movie plan, Sinemia did not disclose the processing fees.

42.    When using Sinemia to purchase a ticket on October 20, 2018, Sinemia charged a $1.80 processing fee per ticket. Plaintiff Dan incurred an additional $1.80 charge on November 9, 2018.

43.    Plaintiff Dan would not have purchased her Sinemia movie plan had she known of the processing fees, or she would have paid significantly less for it than she did.

44.    Plaintiff Dan has been injured as a result of Defendant's conduct as described herein.

### Plaintiff Susan Pai (Florida)

45.    Plaintiff Susan Pai ("Pai") is an adult individual residing in Florida. Plaintiff Pai signed up for Sinemia on or about July 16, 2018. She paid $239.88 for an annual plan for two movies per month for two people, though Sinemia ended up making it a four person, one film a month family plan.

46.    Her account was activated on July 16, 2018, after paying $4.99 to have the cardless option activated instantly. Prior to purchasing her movie plan, Sinemia did not disclose the processing fees.

47.    When using Sinemia to purchase a ticket on October 29, 2018, Sinemia charged a $1.80 processing fee per ticket. The cumulative total was $7.20 for all four members of her family. She incurred subsequent processing fees, ranging between $7.20-$5.40 total, on November 23, 2018 and January 22, 2019.

48.    On or around January 22, 2019, Plaintiff Pai's account was suspended for "misuse." Sinemia advised that she failed to use the Sinemia app to check-in to the movie on or around

8

January 22, 2019, and she was locked out of her Sinemia account until she paid a misuse fee of $31.59. Plaintiff Pai ended up getting this amount refunded by Sinemia on January 27, 2019.

49.    On February 23, 2019, Plaintiff Pai attempted to use the Sinemia app to reserve four tickets only to be prevented from completing the reservation process after getting a warning message that her account was temporarily locked due to the requirement of having her identification verified. In order to reactivate her account, she was advised she would need to submit both a government issued ID and a selfie ID to reactivate her account. Her account remains temporarily suspended.

50.    Plaintiff Pai would not have purchased her Sinemia movie plan had she known of the processing fees, or she would have paid significantly less for it than she did.

51.    Plaintiff Pai has been injured as a result of Defendant's conduct as described herein.

### Plaintiff Chelsea Franklin (Georgia)

52.    Plaintiff Chelsea Franklin ("Franklin") is an adult individual residing in Georgia. Plaintiff Franklin signed up for Sinemia on or around May 29, 2018. She paid $107.88 for an annual plan for two movies per month with one premium movie allowed every thirty days. Her account was activated on May 29, 2018. Prior to Franklin purchasing her movie plan, Sinemia did not disclose the processing fees.

53.    When using Sinemia to purchase a ticket on October 29, 2018, Sinemia charged a $1.80 processing fee. Plaintiff Franklin incurred subsequent $1.80 charges on November 9, 2018; December 23, 2018; December 25, 2018; January 23, 2019; and January 31, 2019. Plaintiff Franklin was also charged a $1.80 processing fee on a Sinemia gift card on February 18, 2019.

54.     Plaintiff Franklin would not have purchased her Sinemia movie plan had she known of the processing fees, or she would have paid significantly less for it than she did.

55.     Plaintiff Franklin has been injured as a result of Defendant's conduct as described herein.

**Defendant Sinemia Inc.**

56.     Defendant Sinemia Inc. is incorporated in Delaware.  Sinemia maintains its principal place of business in Los Angeles, California.

57.     Sinemia operates a website and a smartphone app which offers movie theater ticket subscriptions.

## JURISDICTION AND VENUE

58.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) of the Class Action Fairness Act because this is a class action in which:  (1) there are at least 100 Class members; (2) the combined claims of Class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and (3) Plaintiffs and Defendant are domiciled in different states.

59.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiffs suffered injuries as a result of Defendant's acts in this District; Defendant is authorized to conduct business in this District; Defendant resides in this District and is thus subject to personal jurisdiction in this District; a substantial part of the events or omissions giving rise to the claims occurred in this District; and Defendant has consented to venue in this District.

60.     The Court has personal jurisdiction over Sinemia because it is a Delaware entity that has sufficient minimum contacts in Delaware to render the exercise of jurisdiction by this Court proper and fair.

## FACTUAL ALLEGATIONS

61.     Sinemia is a subscription-based movie ticketing service that offers monthly subscription plans that allow subscribers to see a certain number of movies per month for a set monthly fee.

62.     For example, current packages include three movie tickets per month for $8.99 per month.  Another package offers "A Movie Every Weekday" for $23.99 per month.

63.     At any given time it offers many different subscription options, with the price varying depending on the number of movies per month and the level of restrictions on the movies customers can see (for example some packages are only weekdays, some packages do not include 3D or IMAX movies).

64.     Additionally, customers may choose either individual or family plans.  Family plans allow subscribers to get more than one ticket to the same movie so they can go with family members or friends.

65.     Subscribers also have the option of paying each month or paying for an entire year upfront.  If they choose to pay monthly there is an "initiation fee" typically ranging from $19.99-$29.99 depending on the package.  The initiation fee is waived if a subscriber is willing to pay for an entire year upfront. Many consumers choose a yearly plan in order to avoid the initiation fee.

66.     Sinemia was founded in 2014 and has expanded its services to include the United States, Canada, the United Kingdom, Turkey, and Australia.

67.     When Sinemia first launched, it followed the model introduced by its competitor (and household name) MoviePass where subscribers would receive a debit card in

the mail and then could go to the movie theater of their choice and pay for the ticket using the debit card.

68.     Last year, however, Sinemia stopped issuing the debit cards and switched to a card-less model where customers can only purchase tickets through the Sinemia app.

69.     Now, subscribers select the movie and theater they want on the Sinemia app which then sends them to a third-party such as Fandango or Atom to purchase the tickets. These services each charge their own "convenience" fees, generally around $1-2 per ticket.

70.     Within the last several months, Sinemia has begun charging its own "processing fee" of $1.80 per ticket for tickets purchased through the app.  This fee was not a part of the bargain with its customers. It unilaterally introduced this fee and never disclosed to consumers that it would do so. Consumers purchased movie plans from Sinemia with the expectation that the base rate (monthly or yearly price) would be the extent of the money that they would have to pay for their Sinemia movie plan.

71.     Sinemia's marketing and website advertise only a monthly price for each subscription package without any mention of additional fees.  Rather, Sinemia consistently represents that the monthly price is all subscribers will have to pay in order to see their allotted number of movies:



72.    In the advertisement that follows, Sinemia states that consumers can obtain a

subscription plan for "one low monthly fee of $3.99."





More Access
With a Sinemia membership, you can get 3 movie tickets for less than the price of one ticket!

*See* https://www.sinemia.com/ (last visited Feb. 25, 2019).



*See* https://milled.com/sinemia-com/get-your-3-free-movie-tickets-for-only-9-99-join-sinemia-today-Q5DbsNnLHDOO_pzx (last visited Feb. 25, 2019).

73.      Indeed, as depicted above, Sinemia represented that the tickets obtained for movies under its movie plans are "free movie tickets"—that is, it advertised and marketed its platform as consisting only of the cost for the movie plan itself ("one low monthly cost"), and made clear that the ticket you obtain to go see movies are free, i.e., no fees or charges.

74.      The "About" section of Sinemia's Facebook page confirms that consumers will only pay once for the service: it states that "Sinemia is a social platform for moviegoers

and a monthly subscription-based service that provides movie tickets for **_one_** low monthly fee."[3]

75.     As a result of Sinemia's representations, subscribers reasonably understood these monthly prices to be the total and only cost for their monthly allotment of movie tickets.

76.     Subscribers either subscribed to Sinemia before the company added the $1.80 processing fee or subscribed after and did not realize the fee existed because Sinemia not only makes no mention of it but repeatedly states that subscribers get "[X number of] movie tickets" for the monthly price.

77.     The only mention of any additional fees in Sinemia's Terms and Conditions, a link to which is buried at the bottom of its website, states as follows:

> Advance tickets created using Sinemia app must be purchased within 2 hours. Advance Tickets can be created for a movie that will take place within the span of the member's 30 days membership period, There aren't any limitations on how many advance tickets can be ordered in a 30 days membership period (within the ticket limits of the specific subscription) however the second advance ticket cannot be created before the showtime of the existing advance ticket has passed. The advance ticket online convenience fee and/or processing fee are not covered by Sinemia. Sinemia only covers the cost of the movie tickets.[4]

78.     Although this language mentions the processing fee, it is worded in such a way as to lump it in with the convenience fee and imply that it is not charged by Sinemia and is for something in addition to the movie ticket.  Rather, the processing fee is charged by Sinemia and is simply tacked on arbitrarily and for no additional product or service besides getting the movie tickets consumers already paid for.

---

[3] https://www.facebook.com/pg/SinemiaApp/about/ (last visited Feb. 25, 2019).
[4] https://www.sinemia.com/terms, Section 27.18 (last visited Feb. 25, 2019).

79.      Indeed, the language "and/or processing fee" was only added to the Terms and Conditions on September 20, 2018.

80.      Many members of the proposed class subscribed to Sinemia plans and paid for an entire year prior to Sinemia's unilateral imposition of the processing fee in the middle of their subscription period.  These individuals are stuck with the remainder of several hundred dollar movie plans that now incur an additional $1.80 charge for every movie ticket they thought they already paid for.

81.      Those members of the proposed class who subscribed after Sinemia added the processing fee only did so in reliance on Sinemia's misrepresentations about its pricing since Sinemia did not disclose the processing fee.

82.      Sinemia's unilateral addition of and subsequent failure to disclose the processing fee means that subscribers now pay significantly more to see their allotted number of movies each month.

83.      The amount subscribers pay beyond what they expected to pay when subscribing depends on how many movies they see.  However, an extra $1.80 is a significant amount relative to the price of a movie ticket.

84.      For example, a customer who subscribes to Sinemia's "A Movie Every Weekday" plan expects to pay the monthly price of $23.99 advertised by Sinemia.  If the subscriber were to in fact see one movie every weekday, the total price paid to Sinemia would be more like $59.99 per month.  More than double what Sinemia advertised.[5]

85.      Scores of virtually identical complaints about this exact conduct by Defendant can be found on the internet from consumers across the country. A small sample of the

---

[5] When the third-party convenience fees charged by companies like Fandango and Atom are factored in, the total paid by the customer in this example is approximately $89.99 per month.

countless consumer complaints about Defendant's processing fees are reproduced verbatim below [all *sic*]:

### From the Better Business Bureau[6]

- **David L. On Oct. 23, 2018**
  . . . Bait and switch. I'm an annual member, prepaid a year for around $179 for 3 tickets a month. Two months in, they began charging everyone an extra $1.80 "processing fee" every time I reserve a ticket, which I essentially already paid for. Note this is on top of the "convenience" fees most of us already didn't know we'd be paying. After contacting them on Twitter (which took days to figure out since their phone number is dead and their inbox returned as "full"), we were pointed to the terms and conditions where it left room for them to start charging me this fee. . . . They refused to refund a cent . . . I have to go through the hassle of a chargeback for my full membership through my credit card, and heed my warning, so you don't have to, as well.

- **Cort on Nov. 5, 2018**
  I feel the marketing is deceptive....they require you to use online ticket sellers (with fees) AND then SInemia charges you an additional 1.80 (per ticket) for using their "cardless" system (which you have no choice but to use....I wish I could get a refund

### From Trustpilot[7]

- **Andrew on Nov. 2, 2018**
  I wish I could leave less than 1 star, frankly. Yeah, for 9.99 a month for 3 movies is a decent deal. Except you have a ridiculous $20 fee to pay monthly. Then, I am supposed to get a card, it's been nearly two months and it still hasn't arrived. Because of the lack of card, I paid the extra 9.99 for the Cardless feature. Now I am being charged an extra 1.80 for an advance ticket, on top of the 50¢ my theatre charges for e-ticketing, even though I have no choice because my card is no where to be seen. Contact customer service, you say? I have. Seven emails, three contact forms filled out, and two Facebook messages. No reply to any! I thought MoviePass customer service was bad, but I'm fairly certain Sinemia has the worst customer service in the world. Also, the app is utterly worthless and doesn't work half of the time.

---

[6] https://www.bbb.org/us/ca/west-hollywood/profile/online-retailer/sinemia-inc-1216-883526 (last visited on Feb. 25, 2019).

[7] https://www.trustpilot.com/review/www.sinemia.com (last visited on Feb. 25, 2019).

**Google Play[8]**

- **Newton C. on Nov. 6, 2018**
  Sinemia never sent me a physical card despite precharging me for a year of membership. They then introduced a $1.80 processing fee for all purchases using the careless approach in the app. This is a blatant price hike on a prepaid service. Customer service refuses to make it right. Avoid at all costs.

- **Matthew S. on Nov. 4, 2018**
  There is a new $1.80 fee added now for using cardless option, but there is no other option. Sinemia confirmed that they will not send a physical card. With the new fee it is almost the same as a regular ticket price. There is no option to receive my money back, so I'm stuck for the next 8 months. If you are considering getting this, I would suggest going month to month. Because, who knows what they will change next.

- **Kyle T. on Nov. 1, 2018**
  They added 1.80 fee per movie to use cardless, which is the only option. There is no way to avoid this fee and it is in addition the subscription you already paid and agreed to. The cardless option was already bad as you had to pay the theaters a convenience fee to order the ticket in advanced. There's no advantage to this service, it's a worse experience than what MoviePass was and is a complete waste of time. Don't sign up for the service and if you have, file a chargeback.

86.     Plaintiffs and other Class members have been damaged by Sinemia's misrepresentations and "processing fees" in at least the following ways:

(a)     Plaintiffs and Class members' subscriptions to Sinemia's service are devalued.

(b)     Had Sinemia been honest and revealed the fees to Plaintiffs and members of the proposed class when they subscribed, Plaintiffs and members of the proposed class would not have subscribed to, or would have paid less for their subscriptions.

---

[8] https://play.google.com/store/apps/details?id=com.sinemia.app&hl=en&showAllReviews=true (last visited on Feb. 25, 2019).

87.    The processing fee notwithstanding, customers are also treated to poor customer service from Sinemia.[9]  This includes frequent complaints that Sinemia hid the fact that it had stopped issuing cards from new subscribers who spent months waiting for a card that never came.

## CLASS ALLEGATIONS

88.    Plaintiffs incorporate each of the preceding allegations by reference as though fully set forth at length.

89.    Plaintiffs bring this lawsuit under Rule 23 of the  Federal Rules of Civil Procedure as representatives of the following class:

### Nationwide Class

All persons in the United States who purchased a Sinemia movie plan that was subjected to the imposition of an undisclosed processing fee.

90.    In the alternative, Plaintiffs seek to represent the following state subclasses:

### California Class

All persons in the state of California who purchased a Sinemia movie plan that was subjected to the imposition of an undisclosed processing fee.

### New Jersey Class

All persons in the state of New Jersey who purchased a Sinemia movie plan that was subjected to the imposition of an undisclosed processing fee.

### North Carolina Class

All persons in the state of North Carolina who purchased a Sinemia movie plan that was subjected to the imposition of an undisclosed processing fee.

---

[9] https://www.businessinsider.com/moviepass-competitor-sinemia-is-a-great-deal-but-has-hidden-fees-2018-11?r=UK&IR=T (last visited Feb. 25, 2019) ("Sinemia has emerged as a cheap MoviePass alternative, but it has hidden fees and awful customer service").

**<u>Georgia Class</u>**

All persons in the state of Georgia who purchased a Sinemia movie plan that was subjected to the imposition of an undisclosed processing fee.

**<u>Texas Class</u>**

All persons in the state of Texas who purchased a Sinemia movie plan that was subjected to the imposition of an undisclosed processing fee.

**<u>Ohio Class</u>**

All persons in the state of Ohio who purchased a Sinemia movie plan that was subjected to the imposition of an undisclosed processing fee.

**<u>Florida Class</u>**

All persons in the state of Florida who purchased a Sinemia movie plan that was subjected to the imposition of an undisclosed processing fee.

**<u>New York Class</u>**

All persons in the state of New York who purchased a Sinemia movie plan that was subjected to the imposition of an undisclosed processing fee.

**<u>Michigan Class</u>**

All persons in the state of Michigan who purchased a Sinemia movie plan that was subjected to the imposition of an undisclosed processing fee.

**<u>Pennsylvania Class</u>**

All persons in the state of Pennsylvania who purchased a Sinemia movie plan that was subjected to the imposition of an undisclosed processing fee.

91.    The above classes may be referred to collectively as the "Class." Plaintiffs reserve the right to modify or amend these definitions if discovery and further investigation

reveals that the classes should be expanded, divided into additional subclasses, or modified in any other way.

92.     The following persons and entities are excluded from the class: (1) Sinemia, its officers, directors, employees, subsidiaries, and affiliates; (2) all judges assigned to this case and any members of their immediate families; and, (3) the parties' counsel in this litigation.

93.     The potential Class and sub-classes are so large that joinder of all members would be impracticable. Additionally, there are questions of law or fact common to the class, the claims or defenses of the representative parties are typical of the claims or defenses of the class, and the representative parties will fairly and adequately protect the interests of the class.

94.     This action satisfies all requirements of FED. R. CIV. P. 23, including numerosity, commonality, typicality, adequacy, predominance and superiority.

95.     **Numerosity:** Upon information and belief, at least thousands of Class Members purchased Sinemia movie plans that were subjected to the processing fee described herein. Class members are accordingly so numerous that joinder is impracticable.

96.     **Typicality:** Plaintiffs' claims are typical of the claims of all class members in that Plaintiffs, like all Class Members, purchased Sinemia movie plans that they would not have purchased, or would have paid substantially less for, had they known that Sinemia would charge processing fees (i.e., more than simply the monthly or yearly subscription cost) for each movie ticket obtained under the movie plan.

97.     **Adequacy:** Plaintiffs will fairly and adequately represent and protect the interests of the class because Plaintiffs have no conflicts of interest that would be antagonistic to those of the other Class members and are committed to vigorously prosecuting this case. Plaintiffs seek no relief that is antagonistic or adverse to the members of the Class, and the

damages Plaintiffs have suffered are typical of other Class members.  Plaintiffs have retained competent counsel experienced in the prosecution of consumer protection class actions.

98.    **Commonality:** the claims made by Plaintiffs meet the commonality requirement because they present shared questions of law and fact, and resolving these questions will resolve the class-wide litigation. Questions of law and fact common to the Class include:

a.    Whether Sinemia unlawfully unilaterally changed the terms of its contracts with consumers that purchased Sinemia move plans;

b.    Whether Sinemia's practice of charging processing fees for movie tickets obtained under its movie plans breached its contracts with movie plan purchasers:

c.    Whether Sinemia's conduct alleged herein is in violation of state consumer protection laws;

d.    Whether Sinemia's practice of charging processing fees deprived the Class members of the benefits of their contracts;

e.    Whether Sinemia's processing fees diminished the value of or otherwise devalued consumers' Sinemia movie plans;

f.    Whether Sinemia's conduct injured the Class Members;

g.    Whether Class Members are threatened with irreparable harm and/or are entitled to injunctive and other equitable relief and, if so, the nature of such relief; and

h.    Whether the Class Members are entitled to payment of equitable monetary relief and/or damages plus interest thereon, and if so, the amount of such relief.

99.    **Predominance:** The above (and other) common questions of law and fact predominate over any questions that may affect only individual class members, because Sinemia acted on grounds generally applicable to the Class as a whole.

100.    **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Because the amount of each individual Class Member's claim is small relative to the complexity of the litigation, and because of Sinemia's financial resources, no Class Member is likely to pursue legal redress individually for the violations alleged herein.  Individualized litigation would significantly increase the delay and expense to all parties and to the Court and would create the potential for inconsistent and contradictory rulings.  By contrast, a class action presents fewer management difficulties, allows claims to be heard which would otherwise go unheard because of the expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

101.    Class certification is also appropriate under rule 23(b)(1) and (b)(2) because: the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual class members, which would establish incompatible standards of conduct for Sinemia; the prosecution of separate actions by individual class members would create a risk of adjudications that would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests; Sinemia acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the members of the Class as a whole; and the claims of Class Members include common issues that are appropriate for certification.

## CLAIMS FOR RELIEF

## COUNT I
### FRAUD/FRAUDULENT CONCEALMENT
**(On Behalf of Plaintiffs and the Nationwide Class, or in the alternative, the State Classes)**

102.    Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

103.    Plaintiffs bring this claim individually and on behalf of the Nationwide Class or, in the alternative, each of the State Classes pursuant to the laws of those states.

104.    Prior to Plaintiffs' purchase of Defendant's movie plan subscriptions, Defendant did not conspicuously disclose and omitted to tell Plaintiffs and members of the Class that Defendant would charge a processing fee for each ticket obtained under the movie plans. Defendant knew Plaintiffs and Class members relied upon this material omission, and Defendant made failed to disclose that it would charge the processing fees in order to induce Plaintiffs and members of the Class to act, i.e., to pay for a movie plan subscription.

105.    This omission was material to Plaintiffs such that, had Plaintiffs known that they would have to pay the processing fees, Plaintiffs would not have bought their movie plan subscriptions, or would have purchased them at a lesser price. But Plaintiffs did not know the true facts, and relied upon the Defendant's statements (and omissions) as to pricing for the plans.

106.    Defendant concealed and failed to disclose to Plaintiffs and Class members that, despite its affirmative representations regarding price, it would charge processing fees in excess of the flat movie plan price.

107.    As a result of Defendant's fraud, Plaintiffs and members of the Class were induced into the purchase of services that they otherwise would not have purchased, or would have paid less, and have suffered injury, harm and damages as described herein.

## COUNT II
## BREACH OF CONTRACT
**(On Behalf of Plaintiffs and the Nationwide Class, or in the alternative, the State Classes)**

108.    Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

109.    Plaintiffs bring this claim individually and on behalf of the Nationwide Class, or, in the alternative, each of the State Classes pursuant to the laws of those states.

110.    Plaintiffs and Defendant entered into contracts for the purchase of Sinemia movie plans.

111.    Plaintiffs have fully performed all material covenants, conditions and obligations that they were required to perform by reason of their contracts, except to the extent waived, excused, or made impossible by Defendant's breaches of the contract.

112.    On the other hand, the Plaintiffs never agreed that Defendant could unilaterally impose a processing fee. This term is not part of the parties' contracts with one another, and Defendant did not have the right to act as such under the terms of its agreements with Plaintiffs.

113.    Defendant's conduct frustrated the entire purpose of the contract and the reasons for why Plaintiffs contracted with Defendant in the first place, and materially breached its contracts with Plaintiffs, which had the direct and proximate effect of causing damages to Plaintiffs in an amount to be proven at trial, plus interest allowable under applicable law.

114.    Plaintiffs demand an award of any consequential damages, reasonable attorneys' fees and costs, and any other relief afforded under the laws of their respective states.

## COUNT III
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (On Behalf of Plaintiffs and the Nationwide Class, or in the alternative, the State Classes)

115.    Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

116.    Plaintiffs bring this claim individually and on behalf of the Nationwide Class, or, in the alternative, of each of the State Classes pursuant to the laws of those states.

117.    A covenant of good faith and fair dealing is implied in every contract and imposes upon each party a duty of good faith and fair dealing in its performance of the contract. Common law calls for substantial compliance with the spirit, not just the letter, of a contract in its performance. The duty to act in good faith and deal fairly requires adherence to commercial norms and prevents a contracting party from acting in contravention of the counterparty's objectively reasonable expectations arising from the agreement.

118.    Sinemia breached the covenant of good faith and fair dealing when it added processing fees that it failed to disclose.

119.    All conditions required for Plaintiffs' and the Class members' performance under the agreement occurred.  Plaintiffs' and Class members' were uniformly and materially overcharged pursuant Sinemia's breaches.

120.    As a direct and proximate result of Sinemia's breaches of the covenant of good faith and fair dealing, Plaintiffs and Class members have been damaged in an amount to be proven at trial.

**COUNT IV**
**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**
CAL. BUS. & PROF. CODE §§ 17200, *et seq*. ("UCL")
**(On Behalf of Plaintiff Fasano and the California Class)**

121.    Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

122.    Plaintiff Fasano brings this claim under the UCL—and each claim under each of its prongs, e.g., unlawful, unfair, fraudulent—individually and on behalf of the California Class.

123.    The UCL proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." CAL. BUS. & PROF. CODE § 17200.

**Unlawful Conduct**

124.    Sinemia's conduct is unlawful, in violation of the UCL, because its conduct contravenes the legislatively declared policy against unfair methods of business competition and violates other laws as set forth herein, including the California CLRA.

**Unfair Conduct**

125.    As to Plaintiff Fasano and the California Class, Sinemia acted in an unethical, unscrupulous, outrageous, oppressive, and substantially injurious manner by unfairly adding hidden fees that it did not disclose to consumers.

126.    The gravity of harm resulting from Sinemia's unfair conduct outweighs any potential utility. The practice of adding hidden undisclosed fees—harms the public at large and is part of a common and uniform course of wrongful conduct.

127.    The harm from Sinemia's conduct was not reasonably avoidable by consumers because Sinemia failed to disclose that it would add the processing fees to each ticket obtained through its movie plans.

128.    There were reasonably available alternatives that would further Sinemia's business interests of attracting and retaining customers while maintaining profitability, such as (1) disclosing the processing fees; or (2) increasing the base price of the movie plans rather than charging separate hidden fees.

### Fraudulent Conduct

129.    Sinemia's conduct is fraudulent in violation of the UCL because it is likely to deceive a reasonable consumer in that Sinemia added processing fees without disclosing the fees and while advertising prices in such a way that consumers believed that to be the total price.

130.    Plaintiff Fasano and the California Class suffered injury in fact, including lost money, as a result of being charged significantly more for movie tickets under their movie plans than Sinemia advertised.

131.    Through its unlawful, unfair, and fraudulent conduct, Sinemia acquired money that Plaintiff Fasano and the California Class once had an ownership interest in.

132.    Plaintiff Fasano accordingly seeks appropriate relief, including restitution under the UCL.  Plaintiffs also respectfully seek reasonable attorneys' fees and costs under applicable law, including under California Code of Civil Procedure § 1021.5.

### COUNT V
### VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT
### CAL. CIV. CODE §§ 1750, *et seq*. ("CLRA")
### (On Behalf of Plaintiff Fasano and the California Class)

133.    Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

134.    Plaintiff Fasano brings this claim individually and on behalf of the California Class.

28

135.    Sinemia is a "person" within the meaning of Cal. Civ. Code §§ 1761(c) and 1770, and provided "services" within the meaning of Cal. Civ. Code §§ 1761(b) and 1770.

136.    Sinemia's acts and practices, as alleged herein, violate the CLRA, Cal. Civ. Code §§ 1770(a)(5), (7), and (9) because they consist of unfair methods of competition and unfair and deceptive acts and practices in connection with transactions—namely, the sale of movie plans with hidden or undisclosed fees which amounts to a fraudulent bait and switch scheme.  Specifically, Sinemia represented that the monthly or yearly price for a movie plan was the total customers would have to pay while failing disclose there were additional hidden fees.

137.    Sinemia's misrepresentations and omissions were material.  Had Plaintiffs known that movie plans incurred an additional $1.80 fee per ticket, they would never have purchased their plans or would have paid substantially less for them.

138.    Pursuant to California Civil Code § 1782(a), individually and on behalf of the California Class, Plaintiff sent a CLRA notice to Sinemia on February 25, 2019. Plaintiff sent the CLRA notice via certified mail, return receipt requested, to Sinemia's principal places of business, advising Sinemia that it is in violation of the CLRA and must correct, replace or otherwise rectify the conduct alleged to be in violation of Cal. Civ. Code § 1770. By this cause of action, Plaintiff currently only seeks non-monetary relief presently.  In the event the relief requested has not been provided within 30 days, Plaintiff will amend these allegations to include a request for monetary damages pursuant to the CLRA.

139.    Plaintiff CLRA venue declaration is attached as **Exhibit "A"** hereto in accordance with Cal. Civ. Code § 1780(d).

<u>COUNT VI</u>
**VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT**
**TEX. BUS. & COM. CODE §§ 17.41, *et seq.* ("DTPA")**
**(On Behalf of Plaintiff D'Mello and the Texas Class)**

140.    Plaintiffs repeat, reallege and incorporate by reference each of the foregoing allegations as though fully set forth herein.

141.    Plaintiff D'Mello brings this claim on behalf of the Texas class.

142.    Defendant's conduct as alleged herein constitutes false, misleading, or deceptive trade acts or practices in violation of the DTPA.

143.    Plaintiff and Defendant are each "persons" as defined by TEX. BUS. & COM. CODE § 17.45(3).

144.    The Defendant's movie ticket subscriptions are goods and/or services under TEX. BUS. & COM. CODE § 17.45(1).

145.    Plaintiff and members of the Class are "consumers" as defined in TEX. BUS. & COM. CODE § 17.45(4).    Defendant has at all relevant times engaged in "trade" and "commerce" as defined in TEX. BUS. & COM. CODE § 17.45(6), by advertising, offering for sale, and selling the subscriptions in Texas, directly or indirectly affecting Texas citizens through that trade and commerce.

146.    By failing to disclose that it would charge processing fees, Defendant engaged in deceptive business practices prohibited by the DTPA, including engaging in acts or practices which are unfair, misleading, false, or deceptive to the consumer.

147.    Defendant owed Plaintiff and the other class members a duty to disclose that it intended to charge processing fees because Defendant:

a.    Made incomplete representations about the total cost and value proposition of the subscriptions generally, while purposefully withholding material facts from Plaintiff that contradicted these representations; and

b.    Advertised goods and/or services with the intent not to sell them as advertised by failing to disclose that it would charge additional fees.

148.    Prior to Plaintiff's initial purchase or renewal of Defendant's subscriptions, Defendant consistently represented the cost of its subscription plans without any mention of the processing fees which dramatically change the value proposition of the plans.

149.    To his detriment, Plaintiff and members of the Class relied upon Defendant's material representations about the total cost of the plans, and/or relied on the absence of disclosure by Defendant that it would unilaterally change its rate structure to impose a substantial fee upon each movie ticket obtained through its subscription plans, and Defendant made these material representations to induce Plaintiff and members of the Class to act, *i.e.* to pay subscriptions.

150.    Defendant's intentional concealment of and failure to disclose to Plaintiff and Class members that it would charge processing fees also constitutes an "unconscionable action or course of action" under TEX. BUS. & COM. CODE § 17.45(5) because, to the detriment of Plaintiff and the other Class members, that conduct took advantage of their lack of knowledge, ability, and experience to a grossly unfair degree.

151.    That "unconscionable action or course of action" was a producing cause of the economic damages sustained by Plaintiff and the other Class members.

152.    As a result of Defendant's unlawful acts in violation of the DTPA detailed above, Plaintiff and the Class sustained damages and are, therefore, entitled to damages and

31

other relief as provided under the DTPA.  Defendant's acts and/or omissions in violation of the DTPA as detailed above, were each a producing cause of economic damages to Plaintiff and the Class.

153.    Plaintiff and the other Class members also seek recovery of treble damages as additional statutory damages under the DTPA pursuant to § 17.50(b)(1), as the acts and omissions of Defendant alleged above were committed intentionally and/or knowingly. Awarding treble damages in this case is necessary to encourage private enforcement of Texas's consumer protection laws. Pursuant to § 17.50(d), Plaintiff and the Class also request recovery of costs and attorneys' fees, and any other relief the Court deems proper, as permitted by the DTPA.

## COUNT VII
### VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT
**(N.J. STAT. ANN. § 56:8-1, *et seq.*) ("NJCFA")**
**(On Behalf of Plaintiff Jagini and the New Jersey Class)**

154.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

155.    This claim is brought by Plaintiff Jagini on behalf of the New Jersey Class.

156.    The NJCFA protects consumers against "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . ."  N.J. STAT. ANN. § 56:8-2.

157.    Plaintiff and New Jersey class members are consumers who purchased movie plans for personal, family, or household use.

158.    In the course of Defendant's business, it knowingly concealed, suppressed, and

omitted the fact that it would add processing fees, with the intent that Plaintiff and the Class rely upon that concealment, suppression, and omission when purchasing movie plans. The existence of the processing fee is material to a reasonable consumer in that it changes the value proposition of the movie plans by significantly raising the cost per ticket, and causes the movie plans to be worth substantially less than they would otherwise be valued.

159.    Defendant has engaged in unfair and deceptive trade practices, including: representing the total cost of the movie plans while omitting that it intended to add processing fees, and otherwise engaging in conduct likely to deceive.

160.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

161.    Defendant's conduct caused Plaintiff and Class members to suffer an ascertainable loss. Plaintiff and the other Class members bought movie plans they otherwise would not have, overpaid for their movie plans, did not receive the benefit of their bargain, and their movie plans suffered a diminution in value.

162.    Plaintiff's and other class members' damages are the direct and foreseeable result of Defendant's unlawful conduct. Had the processing fees been disclosed, consumers would not have purchased or would have paid less for the movie plans.

163.    Plaintiff and Class are entitled to recover treble damages, attorneys' fees, filing fees, and reasonable costs. N.J. STAT. ANN. § 56:8-19.

164.    Plaintiff also seeks an order enjoining Defendant's unlawful acts or practices, and any other just and proper relief available under the NJCFA.

165.    Pursuant to N.J. STAT. ANN. § 56:8-20, Plaintiff will serve the New Jersey Attorney General with a copy of the First Amended Class Action Complaint.

**COUNT VIII**
**VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT**
**OHIO REV. CODE ANN. §§ 1345.01, *et seq*. ("OCSPA")**
**(On Behalf of the Walters Plaintiffs and the Ohio Class)**

166.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

167.    The Walters Plaintiffs bring this claim on behalf of themselves and the Ohio class.

168.    Defendant is a "supplier" of movie plans, within the meaning of the OCSPA. *See* OHIO REV. CODE ANN. § 1345.01(C).

169.    The OCSPA is broadly drafted, applying to the sale of consumer goods "to an individual for purposes that are primarily personal, family, or household [uses]." OHIO REV. CODE ANN. § 1345.01(A). Defendant's conduct in this case falls within the scope of the OCPSA.

170.    The OCSPA provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." OHIO REV. CODE ANN. § 1345.02(A).

171.    The OCSPA broadly prohibits unfair, deceptive, and unconscionable practices in consumer sales transactions, including the sale of services. OHIO REV. CODE ANN. § 1345.02(A).

172.    The OCSPA further provides that "a consumer" has a private cause of action for violations of the statute, and expressly allows for class actions. OHIO REV. CODE ANN. § 1345.09.

173.    As detailed herein, Defendant's conduct was unfair, deceptive, and unconscionable.

174.    Defendant acted in the face of prior notice that its conduct was deceptive, unfair, or unconscionable.  Material misrepresentations concerning the cost of the movie plans, as well

34

as material omissions concerning the addition of processing fees, constitute a violation of the statute.

175.    It is also a deceptive act or practice for purposes of the OCSPA if a supplier makes representations, claims, or assertions of fact in the absence of a reasonable basis in fact. *See* OHIO REV. CODE ANN. § 109:4-3-10(A).

176.    As a direct and proximate result of Defendant's violations of the OCSPA, Plaintiffs and members of the Class have been injured.

177.    Plaintiffs and the Ohio class members have suffered injuries in fact and actual damages, including but not limited to payment of the processing fees, overpayment for their movie plans, and financial losses from the devaluation of their movie plans, all resulting from Defendant's conduct and practices in violation of the OCSPA.

178.    These injuries are of the type that the OCSPA was designed to prevent and are the direct and proximate result of Defendant's unlawful conduct.

## COUNT IX
## VIOLATIONS OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### FLA. STAT. § 501.201, *et seq*. ("FDUTPA")
### (On Behalf of Plaintiff Pai and the Florida Class)

179.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

180.    Plaintiff Pai brings this claim on behalf of herself and the Florida Class.

181.    Plaintiff Pai, and Florida class members are "consumers" within the meaning of FLA. STAT. § 501.203(7).

182.    Defendant engaged in "trade or commerce" within the meaning of FLA. STAT. § 501.203(8).

183.    The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or

practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.204(1).

184.    Defendant's acts and practices, described herein, are unfair in violation of Florida law because it violates Florida public policy and consumer protection laws requiring fair and truthful advertising of a products quality and cost.

185.    Defendant acted in an unethical, unscrupulous, outrageous, oppressive, and substantially injurious manner, in at least the following respects:

a.    promoted and sold movie plains it knew it would charge more for than advertised; and

b.    failed to disclose the addition of processing fees, and represented through advertising and other processes particular pricing models and amounts that were inconsistent with Defendant's actual intentions.

186.    The gravity of harm resulting from Defendant's unfair conduct outweighs any potential utility. The practice of selling movie plans without disclosing additional processing fees harms the public at large and is part of a common and uniform course of wrongful conduct.

187.    The harm from Defendant's conduct was not reasonably avoidable by consumers. Defendant did not disclose that it would add processing fees. Plaintiff did not know of, and had no reasonable means of discovering, that Defendant would add processing fees to the cost of their subscriptions.

188.    Defendant also engaged in deceptive trade practices in violation of Florida law, by promoting the total cost and value proposition of its movie plans while willfully failing to disclose and actively concealing its intention of adding processing fees.

189.    Defendant committed deceptive acts and practices with the intent that consumers,

such as Plaintiff Pai and Florida class members, would rely upon Defendant's representations and omissions when deciding whether to purchase a movie plan.

190.    Plaintiff and Class members suffered ascertainable loss as a direct and proximate result of Defendant's unfair and deceptive acts or practices. Had Plaintiff Pai and the Florida class members known that defendant would add processing fees, they would not have purchased the movie plans, or would have paid significantly less for the them. Among other injuries, they had to pay processing fees to use their movie plans, overpaid for their movie plans, and their movie plans suffered a diminution in value.

191.    Plaintiff Pai and the Florida class members are entitled to recover their actual damages under FLA. STAT. § 501.211(2) and reasonable attorneys' fees under FLA. STAT. § 501.2105(1).

192.    Plaintiff Pai also seeks an order enjoining Defendant's unfair and deceptive acts or practices pursuant to FLA. STAT. § 501.211, and any other just and proper relief available under the FDUTPA.

**COUNT X**
**VIOLATIONS OF THE NORTH CAROLINA**
**UNFAIR AND DECEPTIVE TRADE PRACTICES ACT**
**N.C. GEN. STAT. § 75-1.1, *et seq.* ("NCUDTPA")**
**(On Behalf of Plaintiff Dan and the North Carolina Class)**

193.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

194.    Plaintiff Dan brings this claim on behalf of herself and the North Carolina class.

195.    The NCUDTPA prohibits a person from engaging in "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]" The NCUDTPA provides a private right of action for any person injured "by

reason of any act or thing done by any other person, firm or corporation in violation of" the NCUDTPA. N.C. GEN. STAT. § 75-16.

196.    Defendant's acts and practices complained of herein were performed in the course of Defendant's trade or business and thus occurred in or affected "commerce," as defined in N.C. GEN. STAT. § 75-1.1(b).

197.    Defendant's acts and practices are unfair in at least the following respects: Defendant knowingly sold Plaintiff Dan and North Carolina class members movie plans without disclosing its intention to add additional processing fees.

198.    Defendant's acts and practices are contrary to North Carolina law and policy and constitute immoral, unethical, oppressive, and unscrupulous business practices that caused substantial injury to Plaintiff and North Carolina class members. The gravity of the harm resulting from Defendant's unfair conduct outweighs any potential utility of the conduct. The practice of selling movie plan subscriptions without disclosing additional fees harms the public at large and is part of a common and uniform course of wrongful conduct. There are reasonably available alternatives that would further Defendant's business interests of increasing sales. The harm from Defendant's unfair conduct was not reasonably avoidable by consumers.

199.    Defendant's acts and practices are deceptive because Defendant willfully failed to disclose and actively concealed its intention of adding processing fees; represented that the movie plans follow a pricing model and provide a value proposition which they do not; advertised movie plans with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

200.    Defendant's conduct proximately caused injuries to Plaintiff and North Carolina class members.

201.    Defendant acted with willful and conscious disregard of the rights of others, subjecting Plaintiff and North Carolina class members to unjust hardship as a result, such that an award of punitive damages is appropriate.

202.    Plaintiff and North Carolina class members were injured as a result of Defendant's conduct in that they had to pay processing fees in order to use their movie plans, overpaid for their movie plans, did not receive the benefit of their bargain, and their movie plans have suffered a diminution in value. These injuries are the direct and natural consequence of Defendant's violations alleged herein.

203.    Plaintiff Dan, individually and on behalf of North Carolina class, seeks treble damages pursuant to N.C. GEN. STAT. § 75-16, and an award of reasonable attorneys' fees pursuant to N.C. GEN. STAT. § 75-16.1.

## COUNT XI
### VIOLATIONS OF MICHIGAN CONSUMER PROTECTION ACT
#### MICH. COMP. LAWS §§ 445.901, *et seq.* ("MCPA")
#### (On Behalf of Plaintiff Thal and the Michigan Class)

204.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

205.    Plaintiff Thal brings this count on behalf of himself and members of the Michigan class.

206.    The MCPA is designed to provide a remedy for consumers who are injured by deceptive business practices. The MCPA expressly allows for class actions on behalf of consumers who have suffered a loss as a result of a violation of the Act. MICH. COMP. LAWS § 445.911(3).

207.    Plaintiff Thal, Michigan Class members, and Defendant fall within the definition of "person" under the MCPA.

208.    Defendant's conduct alleged herein constitutes unfair, unconscionable, and deceptive acts in violation of the MCPA, including but not necessarily limited to, the following sections:

a.      § 445.903(s): failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;

b.      § 445.903(bb): making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and

c.      § 445.903(cc): failing to reveal facts which are material to the transaction in light of representations of fact made in a positive manner.

209.    Specifically, as alleged herein, Defendant knowingly made (or should have known they were making) misrepresentations about the total cost and value proposition of its movie plans.

210.    Defendant concealed, omitted, and failed to disclose the truth about its pricing and the addition of processing fees in order to make sales and increase profits.

211.    Because of Defendant's violation of the MCPA, Plaintiff Thal and members of the Michigan Class were injured in that they had to pay processing fees, overpaid for their movie plans, did not receive the benefit of their bargain, and, suffered a diminution in the value of their movie plans. These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

212.    Plaintiffs demand actual damages, punitive damages, reasonable attorneys' fees, costs, and any other compensatory or consequential damages allowed by law.

<u>COUNT XII</u>
**VIOLATIONS OF GEORGIA FAIR BUSINESS PRACTICES ACT,
O.C.G.A. § 10-1-309,** *et seq.* **("GFBPA")
(On Behalf of Plaintiff Franklin and the Georgia Class)**

213.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

214.    Plaintiff Franklin brings this claim on behalf of the Georgia Class.

215.    The Georgia Fair Business Practices Act ("GFBPA") O.C.G.A. § 10-1-309 *et seq* prohibits unfair or deceptive acts or practices in the conduct of consumer transactions and consumer pacts or practices in trade or commerce.

216.    Defendant has engaged in deceptive, unconscionable, unfair, fraudulent and misleading commercial practices in the marketing, promotion, distribution, and sale of its movie plans, which it knew it would add additional processing fees, in violation of the GFBPA.

217.    Defendant knew it was going to add processing fees to movie plans but undertook active steps to conceal this fact.

218.    Defendant's conduct was objectively deceptive and was likely to deceive reasonable consumers under the circumstances.

219.    Defendant had a duty to disclose its knowledge of this material pricing change becase they possessed superior and exclusive knowledge.

220.    Additionally, Defendant advertised and marketed the movie plans with the intent not to sell them as advertised.

221.    Had Defendant disclosed the processing fees Plaintiff Franklin and the Georgia class members would not have purchased their movie plans or would have paid substantially less for them.

222.    Defendant's conduct had an impact on the public interest because the acts were part of a generalized course of conduct that affected numerous consumers.

223.    As a result of the foregoing acts, omissions, and unconscionable commercial practices, Plaintiff Franklin and the Georgia class members have suffered an ascertainable loss in that they had to pay processing fees in order to use their movie plans, overpaid for their movie plans, did not receive the benefit of the bargain, and their movie plans have suffered a diminution in value. These injuries are the direct and natural consequence of Defendant's violations alleged herein.

224.    Plaintiff Franklin and the Georgia class members are entitled to recover such damages, together with appropriate penalties, including exemplary damages, as well as attorneys' fees and costs of suit.

225.    Defendant was put on notice of these claims and its deceptive acts and practices alleged herein through the filing of the initial complaint in this case. Plaintiff Franklin seeks all available statutory remedies on behalf of the Georgia class. A copy of this First Amended Class Action Complaint will be mailed to the State Administrator in Georgia.

**COUNT XIII**
**VIOLATIONS OF THE GEORGIA**
**UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**GA. CODE ANN. §§ 10-1-370,** *et seq.* **("Georgia DTPA")**
**(On Behalf of Plaintiff Franklin and the Georgia Class)**

226.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth within.

227.    Plaintiff Franklin brings this claim on behalf of the Georgia class.

228.    The Georgia DTPA prohibits "deceptive trade practices," which include the "misrepresentation of standard or quality of goods or services;" and "engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." GA. CODE ANN. § 10-1-372(a).

229.    In the course of its business, Defendant concealed and suppressed material facts concerning the processing fees. Defendant thus violated the Georgia DTPA by, at minimum, employing deception, deceptive acts or practices, fraud or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of its subscription plans.

230.    Defendant intentionally and knowingly misrepresented and/or omitted material facts regarding the processing fees with intent to mislead Plaintiff and the Georgia class.

231.    Defendant knew or should have known that its conduct violated the Georgia DTPA.

232.    Defendant owed Plaintiff a duty to disclose the processing fees because it:

a.    Possessed exclusive knowledge that it was selling subscription plans that would eventually be subjected to additional processing fees;

b.    Intentionally concealed the foregoing from Plaintiff and Class members; and/or

c.    Made incomplete representations about the quality of its subscription plans generally, while purposefully withholding material facts from Plaintiff that contradicted these representations

233.   Defendant's concealment of the processing fees and true characteristics of the subscriptions plans were material to Plaintiff and the Georgia Class. Had Plaintiff and members of the Georgia Class known of the processing fees, they would not have purchased subscriptions plans, or would have paid significantly less for them.

234.   Defendant's unfair or deceptive acts or practices was likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true nature, quality, and characteristics of the subscription plans offered by Defendant.

235.   Plaintiff and the Georgia Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment of and failure to disclose material information. Plaintiff's and Georgia Class members' subscription plans have also suffered diminished value, as well as lost or diminished use.

236.   Defendant had an ongoing duty to all Sinemia customers to refrain from unfair and deceptive practices under the Georgia DTPA. All subscribers suffered ascertainable losses, including out of pocket expenses, loss of use, and diminished value.

237.   As a direct and proximate result of Defendant's violations of the Georgia DTPA, Plaintiff and the Georgia Class have suffered injury-in-fact and/or actual damages.

238.   Plaintiff seeks an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia DTPA per GA. CODE ANN. § 10-1-373.

239.   Plaintiff and Class members are entitled to an award of costs of suit and reasonable attorneys' fees pursuant to GA. CODE. ANN. § 10-1-373(b)(2) because Sinemia

willfully engaged in the conduct alleged herein with knowledge that this conduct was and is deceptive.

## COUNT XIV
## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349,
### N.Y. GEN. BUS. LAW § 349 ("GBL")
### (On Behalf of Plaintiff Khera and the New York Class)

240.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

241.    Plaintiff Khera brings this claim on behalf of the New York class.

242.    Plaintiff Khera and New York class members are "persons" within the meaning of the New York General Business Law ("GBL"). N.Y. GEN. BUS. LAW § 349(h).

243.    Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of the GBL. N.Y. GEN. BUS. LAW § 349(b).

244.    Under GBL section 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce" are unlawful.

245.    In the course of Defendant's business, it failed to disclose and actively concealed its intention of adding processing fees with the intent that consumers rely on that concealment in deciding whether to purchase its movie plans.

246.    By intentionally concealing the processing fees while advertising its movie plans and pricing, Defendant engaged in deceptive acts or practices in violation of GBL section 349.

247.    Defendant's deceptive acts or practices were materially misleading and its conduct was likely to and did deceive reasonable consumers, including Plaintiff Khera, about the true price and value proposition of its movie plans.

248.    Defendant's actions set forth above occurred in the conduct of trade or commerce.

249.    Defendant's misleading conduct concerns widely purchased consumer products and affects the public interest. Defendant's conduct included unfair and misleading acts or practices that have the capacity to deceive consumers and are harmful to the public at large.

250.    Plaintiff Khera and New York class members suffered ascertainable loss as a direct and proximate result of Defendant's GBL violations in that they had to pay processing fees in order to use their movie plans, overpaid for their movie plans, did not receive the benefit of the bargain, and their movie plans have suffered a diminution in value. These injuries are the direct and natural consequence of Defendant's material misrepresentations and omissions.

251.    Plaintiff Khera, individually and on behalf of the New York class, requests that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its unfair and deceptive practices. Under the GBL, Plaintiff Khera and the New York class members are entitled to recover their actual damages or $50, whichever is greater. Additionally, because Defendant acted willfully or knowingly, Plaintiff Khera and the New York class members are entitled to recover three times their actual damages. Plaintiff Khera is also entitled to reasonable attorneys' fees.

<u>**COUNT XV**</u>
**VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW,**
**PA. STAT. ANN. § 201-1, *et seq.* ("UTPCPL")**
**(On Behalf of Plaintiff Newman and the Pennsylvania Class)**

252.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

253.    Plaintiff Newman brings this claim on behalf of the Pennsylvania class.

254.    By failing to disclose and actively concealing the processing fees, Defendant engaged in deceptive business practices prohibited by the Pennsylvania Unfair Trade Practices

and Consumer Protection Law, PA. STAT. ANN. § 201-1, et seq. ("UTPCPL"), including (i) representing that its movie plans have a price and value proposition which they do not have, (ii) advertising its movie plans with the intent not to sell them as advertised, and (iii) engaging in acts or practices which are otherwise unfair, misleading, false, or deceptive to the consumer.

255.    Defendant knew it was going to add the processing fees and that these fees would meaningfully change the price and value of the movie plans.  Defendant nevertheless failed to warn Plaintiff Newman and the Class members about these fees despite having a duty to do so.

256.    Defendant owed Plaintiff Newman and the Pennsylvania Class members a duty to disclose the processing fees because Defendant:

      a.      Possessed exclusive knowledge it was going to add processing fees;

      b.      Intentionally concealed that it was going to add processing fees; and/or

      c.      Made incomplete representations about the pricing and value proposition of its movie plans while purposefully withholding material facts from Plaintiff Newman and the Class members about the pricing and value proposition of its movie plans.

257.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Class members, about the true cost and value proposition of its movie plans.

258.    Plaintiff Newman and the Pennsylvania Class members sustained damage as a result of Defendant's unlawful acts and are, therefore, entitled to damages and other relief as provided under the UTPCPL, including treble damages.

259.    Plaintiff Newman and the Pennsylvania Class members also seek court costs and attorneys' fees as a result of Defendant's violation of the UTPCPL as provided in PA. STAT. ANN. § 201-9.2.

**COUNT XVI**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiffs and the Nationwide Class, or in the alternative, the State Classes)**

260.    Plaintiffs repeat, reallege and incorporate by reference each of the foregoing allegations as though fully set forth herein.

261.    Plaintiffs bring this claim individually and on behalf of the Nationwide Class or, in the alternative, the State Classes pursuant to the laws of those states.

262.    This claim is pleaded in the alternative to Plaintiffs' contract claims.

263.    As the intended and expected result of its conscious wrongdoing, Defendant has profited and benefited from the purchase of movie plans by Plaintiffs and the Class that are devalued or otherwise worth less due to the processing fees. Defendant has also profited and benefited from the processing fees themselves, which Plaintiffs and Class members did not know they would have to pay in signing up for movie plans and never agreed to pay.

264.    Defendant has voluntarily accepted and retained these profits and benefits, with full knowledge and awareness that, as a result of Defendant's misconduct alleged herein, Plaintiffs and the Class were not receiving services of the quality, nature, fitness, or value that had been represented by Defendant, and that a reasonable consumer would expect. Specifically, Plaintiffs and the Class members expected that they would only pay the price of their movie plans—not the processing fee that Defendant has begun charging in a money-grab, bait and switch ploy.

265.    Defendant has been unjustly enriched by its fraudulent, deceptive, unlawful, and unfair conduct, and withholding of benefits and unearned monies from Plaintiffs and the Class, at the expense of these parties.

266.    Equity and good conscience militate against permitting Defendant to retain these profits and benefits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs individually and on behalf of all others similarly situated, pray for relief and judgment against Defendant, as follows:

A.    For an order certifying the proposed class, appointing Plaintiffs and their counsel to represent the proposed class and notice to the proposed class to be paid by Defendant;

B.    For damages suffered by Plaintiffs and the proposed class;

C.    For restitution to Plaintiffs and the proposed class of all monies wrongfully obtained by Defendant;

D.    For injunctive relief requiring Defendant to cease and desist from engaging in the unlawful, unfair and/or deceptive practices alleged herein;

E.    An order awarding declaratory relief, retrospective and prospective injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and injunctive relief to remedy Defendant's past conduct;

F.    For Plaintiffs' reasonable attorneys' fees, as permitted by law;

G.    For Plaintiff's costs incurred;

H.    For pre-judgment and post-judgment interest at the maximum allowable rate on any amounts awarded; and

I.    For such other and further relief that this Court deems just and proper under equity or law, including the award of punitive damages.

## JURY DEMAND

Plaintiffs demand a trial by jury on all counts so triable.

Dated: February 25, 2019                    Respectfully submitted,


                                    By:        /s/ Robert J. Kriner, Jr.
                                    Robert J. Kriner, Jr. (Del. Bar No. 2546)
                                    Tiffany J. Cramer (Del. Bar No. 4998)
                                    CHIMICLES SCHWARTZ KRINER &
                                    DONALDSON-SMITH LLP
                                    2711 Centerville Road Suite 201
                                    Wilmington, DE 19808
                                    Tel.: 302-656-2500
                                    Fax: 302-656-9053
                                    rjk@chimicles.com
                                    tjc@chimicles.com

                                    Benjamin F. Johns (PA ID No. 201373)
                                    Andrew W. Ferich (PA ID No. 313696)
                                    Alex M. Kashurba (PA ID No. 319003)
                                    CHIMICLES SCHWARTZ KRINER &
                                    DONALDSON-SMITH LLP
                                    361 W. Lancaster Avenue
                                    Haverford, PA  19041
                                    610-642-8500
                                    610-649-3633 (Fax)
                                    bfj@chimicles.com
                                    awf@chimicles.com
                                    amk@chimicles.com

                                    *Counsel for Plaintiffs and
                                    the Putative Class Members*